PIER, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*September 3 — November 24, 1896.*

*Railroads: Personal injuries: Custom: Evidence: Negligence: Proximate cause: Special verdict: Instructions: Contributory negligence: Immaterial error.*

1. In an action against a railroad company for personal injuries received by the foreman of a switching crew while attempting to chain together cars, the apparatus for coupling which had been broken, the customary way of making such a coupling in that yard is a proper fact to be considered in connection with other surrounding circumstances in judging of the conduct of persons at work in the yard. It is not a custom prevailing in a particular trade or business offered for the purpose of fixing, controlling, or defining contract relations, and hence need not be established beyond a reasonable doubt.

2. Evidence in such a case that the foreman of another switching crew, after being warned that cars were to be chained on a certain track, deliberately ordered a train to be backed against the cars standing on that track so as to move them, was sufficient to take the question of negligence to the jury.

3. The question whether the foreman of the second crew, after being notified that plaintiff was going to chain up the cars, did "what a man of ordinary intelligence and prudence, conducting the business carried on by the defendant and in [his] place and stead, would not have done in the light of the attending circumstances," was ambiguous and did not throw light upon any material issue. A refusal to submit it, and others depending upon it, for special verdict was therefore not erroneous.

4. A failure to place before the jury, either in the submission for a special verdict or through an instruction, the principle that a negligent act is not the proximate cause of an injury unless *a person of ordinary intelligence and prudence* under similar circumstances ought to have expected that an injury would occur by reason of his negligence, is *held* not to have been error in the absence of a specific request, where the jury were required to find whether the alleged *negligent person* had reason to apprehend that his actions in the premises were liable to result in injury to the plaintiff, and instructed to find first whether *such person* was guilty of negligence which was the proximate cause of plaintiff's injury, and then to determine whether that negligence was such that *he* had reason to apprehend that it was likely to result in such injury.

5. Nor was it error to refuse to submit questions such as "Did the plaintiff have control over the means, time, and manner of chaining the cars?" "Did the plaintiff have control over the means with which and the manner in which he should be protected while chaining the cars?" since they referred to evidentiary facts not necessary to be decided in the verdict.

6. An instruction that it was for the jury to say whether or not, in view of all the precautions which plaintiff had adopted and in view of all the circumstances surrounding him, he had reason to apprehend injury while chaining said cars, and that "his want of ordinary care, if it existed, must have been of such a nature as to proximately cause or contribute to the injury of which he complained, and of such a nature as to charge him with the duty of apprehending the consequences of such want of ordinary care,— such a nature that a reasonable man under like circumstances would have apprehended the danger which followed," is *held* to

have sufficiently covered the question whether the plaintiff took
such precaution for his own safety as men of ordinary intelligence
and prudence would have taken under the circumstances. .

7. The sufficiency of the evidence to support an answer of the special
verdict is immaterial where the question and answer do not dis-
pose of any material issue.

APPEAL from a judgment of the circuit court for Milwau-
kee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This action was brought to recover damages for personal
injuries suffered by plaintiff at about 8 o'clock in the even-
ing of the 6th day of May, 1893, in the switch yards of the
defendant in the city of Milwaukee, while engaged at work
therein as a switchman.   There was no dispute in the facts
except upon one or two minor questions.   It appeared from
the evidence that plaintiff was the foreman of a night
switching crew, and upon the evening in question was in
charge of an engine and freight cars operating in the de-
fendant's yards.   The track upon which the plaintiff and
his crew (which consisted of an engineer, a fireman, and two
helpers) were working extended east and west a distance of
about 3,000 feet.   At either end it extended into what is
called a "lead track;" i. e. a main track switching off into
a large number of tracks.   The plaintiff's engine was headed
to the west, and was pulling a train of freight cars in that
direction, when the drawbar of the fourth car from the en-
gine pulled out.   It appears that when the coupling appa-
ratus of a car became broken it was proper for the plaintiff,
in the line of his duty, to make the coupling by means of a
chain, and go under the car in order to attach the chain.   The
plaintiff accordingly procured a chain from the switch house,
and brought it back to the broken car.   Another switching
crew had been working on the lead track at the east end of
this particular track, and, before proceeding to make the
coupling with the chain, the plaintiff told Rumsey, one of
his helpers, to go back to the east end of the track, and tell

that switching crew not to throw in any more cars, as he was going to chain the car up. The plaintiff then directed his other helper, Slomer, to go on top of the cars, and tell him when Rumsey got back there. According to the plaintiff's evidence, Slomer, after a few minutes, reported that Rumsey had gotten back to the other crew, and the plaintiff testifies that he himself looked back, and saw that Rumsey was there, and he then went under the cars and proceeded to chain them together. While he was at work under the cars, Slomer hallooed to the effect that they were shoving cars in on the track in question. The plaintiff immediately stooped down, but one of the cars was pushed upon his right leg, lacerating the muscles of the calf, and otherwise injuring him. Slomer was called as a witness and denied having told the plaintiff that Rumsey had gotten back to the other crew.

It appeared by the testimony of Rumsey, which was practically undisputed, that when he was sent to notify the other crew he first met Mullinger, one of the helpers, and delivered his message to him, and Mullinger directed him to go on and tell White, as White was foreman of the crew. He then proceeded, and next met Brigham, another of White's helpers, and gave him the message, after which he walked on a distance of about 125 feet, and found White, the foreman of the crew, standing 150 feet west of his engine, which was standing still; that he told White not to put any more cars in there; that *Pier* was going under the car to chain it; that White replied: "We will put these in, and then you will have plenty of time to chain up while we are after another dose." White, after receiving this warning, gave his engineer the signal to start, and was walking beside his cars down the lead track towards the east of the switch on the track on which *Pier* was working, and found the switch turned off it. White said to Brigham, "On 4, Al?"— 4 being the number of the track on which

the plaintiff was working. Brigham replied: "No. Didn't George tell you he was going to chain up a car down there?" White answered: "Well, we will just go in easy, and couple them on. Throw the switch over on 4." Thereupon Brigham obeyed White's direction, and threw the switch, and the engine with four cars was backed in against the rear end of *Pier's* train of cars and coupled, and, after the coupling was made, they were pushed back fifteen feet. It was this movement of the cars that drove the train over plaintiff's leg and caused the injury. The testimony as to the warning given to Mullinger, Brigham, and White was undisputed. The foreman, White, died before the trial of this action, and his testimony had not been taken at the time of his death.

There was evidence offered by the plaintiff to show that when it became necessary to chain a car in the yards it was the usual custom for the foreman of the switching gang to send back a flagman to protect the rear end of the train as the plaintiff did in this case, and, after waiting a reasonable time for him to reach the lead track, go under and do the work; it being the flagman's duty to remain out until he should be called in. There was evidence offered by the defendant tending to show that there was no such custom or usage, but that the foreman should wait for a signal from the flagman, or some other notification, that his mission had been successful, before going under the cars.

The following special verdict was rendered: "(1) Was the plaintiff's injury caused by the running in of a locomotive and cars upon the track where he was at work while he was in the act of chaining a car, and the consequent movement of said car? Answer (by consent of counsel). Yes. (2) Did Gang Foreman White cause said locomotive and cars to be run in upon said track? Answer (by direction of the court). Yes. (3) Was Gang Foreman White warned before he ran said locomotive and cars upon said

track that the plaintiff was going to chain up a car? Answer (by direction of the court). He was. (4) If you answer the last interrogatory in the affirmative, did said Gang Foreman White, notwithstanding such warning, cause the switch which had been so placed as to prevent the running in of cars upon said track to be replaced so that cars could be run in upon said track, and did he thereupon cause said locomotive and cars to be run in upon said track with such force as to move the car under which the plaintiff was at work, and thereby cause the injury of which he complains? Answer (by consent of counsel). Yes. (5) If you answer the last interrogatory in the affirmative, was said Gang Foreman White guilty of negligence in the premises which was the proximate cause of the plaintiff's injury? Answer. Yes. (6) If you answer the fourth interrogatory in the affirmative, did said Gang Foreman White have reason to anticipate and apprehend that his action in the premises was liable to result in injury to the plaintiff? Answer. Yes. (7) If you answer the fourth interrogatory in the affirmative, was said Gang Foreman White in the performance of said acts acting in the line of his duty and employment as a gang foreman of the defendant corporation? Answer (by direction of the court). He was. (8) Was the plaintiff guilty of any want of ordinary care on his part which proximately caused or contributed to the injury of which he complains? Answer. No. (9) According to the usages and rules of the defendant corporation, was the plaintiff at liberty to adopt any reasonable and proper precaution for his own safety while necessarily employed in chaining up a car? Answer. No. (10) Were the precautions which the plaintiff adopted justified by the usages of the service in which he was engaged? Answer. Yes. (11) Were the precautions adopted by the plaintiff for his own safety while engaged in chaining up said car reasonably safe and sufficient? Answer. Yes. (12) In view of the precautions adopted by

him for his own safety, and in view of all the circumstances surrounding him at the time, had the plaintiff any reason to apprehend that he would be injured while chaining said car? Answer. No. (13) If the court should order judgment for the plaintiff, in what sum do you assess his damages? Answer. $7,000." Upon this verdict judgment for plaintiff was rendered, and defendant appealed.

*C. H. Van Alstine*, of counsel, for the appellant, to the point that one who relies upon a custom of trade for the purpose of establishing a cause of action must prove such custom beyond a reasonable doubt, cited *Hinton v. Coleman*, 45 Wis. 165, 168, 169; *Adams v. Pittsburgh Ins. Co.* 76 Pa. St. 411; *Turner v. Dawson*, 50 Ill. 85, 86; *The Harbinger*, 50 Fed. Rep. 941; *Hibbard, S. & B. v. Peck*, 75 Wis. 619, 623.

For the respondent there was a brief by *Timlin & Glicksman*, and oral argument by *W. H. Timlin*. They argued, among other things, that the evidence in the case at bar as to the customary way of chaining cars was to be considered not as conclusively determining that White was negligent, but only as shedding light on the question as to what degree of care was observed by him. *Marshall v. Am. Ex. Co.* 7 Wis. 1; *Townley v. C., M. & St. P. R. Co.* 53 id. 626, 635; *Pennsylvania Co. v. Stoelke*, 104 Ill. 201, 204. See, also, *Prosser v. M. C. R. Co.* 17 Mont. 372; *Kelly v. S. M. R. Co.* 28 Minn. 98; *Chicago, M. & St. P. R. Co. v. Carpenter*, 56 Fed. Rep. 451, 5 C. C. A. 552; *Flanders v. C., St. P., M. & O. R. Co.* 51 Minn. 193; *Ashman v. F. & P. M. R. Co.* 90 Mich. 567; *Kolsti v. M. & St. L. R. Co.* 32 Minn. 134; *Wallace v. C. V. R. Co.* 138 N. Y. 302; *Casey v. N. Y. C. & H. R. R. Co.* 78 id. 518; *Murphy v. Greeley*, 146 Mass. 196.

The following opinion was filed September 22, 1896:

WINSLOW, J.   Thirty-two errors are assigned and argued in the defendant's brief. We shall probably be pardoned if we do not discuss all of them at length in this opinion. We

will endeavor to state our views upon the more important contentions made, leaving the lesser assignments to be overruled *sub silentio*.

The negligence upon which the plaintiff relied for a recovery was the act of White, the foreman of the other switching gang, in running his engine and cars against the car standing on track No. 4, after he had been notified that *Pier* was about to chain a car on that track. As tending to prove that such act on the part of White was negligent, evidence was offered by the plaintiff tending to show that it was customary in the yard, when a car was to be chained, for the foreman to send a flagman to notify any crew which might be at the other end of the switch of the fact that a car was about to be chained, and, after waiting a reasonable time for the flagman to reach his destination, to proceed to chain up the car, without waiting for the return of the flagman, or for a signal that he had performed his mission. On the other hand, evidence was introduced by the defendant tending to controvert the existence of any such custom in the yard. It is claimed by the defendant that such custom must be proven beyond a reasonable doubt, and that, if such custom be not so proven, there was no negligence on the part of White, and the plaintiff's cause of action at once fails. Both of these contentions are untenable. The custom which the plaintiff attempted to prove was not a custom prevailing in a particular trade or business offered for the purpose of fixing, controlling, or defining the contract relations of parties. It was simply a customary way of doing certain things prevailing in that switch yard, which, if proven, would be a fact proper to be considered in connection with the other surrounding facts in judging of the conduct of White and the plaintiff. If proven satisfactorily, it would not necessarily determine the question of negligence or no negligence. Such customs may be proven. *Simonds v. Baraboo*, 93 Wis. 40. We know of no authority

Pier vs. Chicago, Milwaukee & St. Paul R. Co.

which holds that they must be proven by any higher degree or quantity of evidence than other facts in civil cases, nor do we perceive any good reason why such a rule should prevail. But, even if the custom were absolutely disproven in the present case, there would still be ample ground left for the plaintiff to claim negligence. The fact that the foreman, White, after being warned that a car was about to be chained on track No. 4, deliberately ordered a train to be backed against the cars standing on that track, and moved them, was in itself evidence sufficient to go to the jury on the question of negligence, regardless of the question whether any custom was proven or not.

Exception was duly taken to the refusal of the court to embody the following questions in the special verdict: "(1) Did Gang Foreman White, after he was notified that *Pier* was going to chain up a car, do what a man of ordinary intelligence and prudence, conducting the business carried on by the defendant, and in White's place and stead, would not have done in the light of the attending circumstances? (2) If you answer the first question 'Yes,' then answer this question: Ought a man of ordinary intelligence and prudence, conducting the business carried on by the defendant, and in White's place and stead, to have reasonably expected, under the attending circumstances, that such want of care would be likely to cause a bodily injury of some kind to the plaintiff? (3) If you answer the first question 'Yes,' then answer this question: Was plaintiff's injury the natural and probable consequence of such want of care, and was such injury one which a man of ordinary intelligence and prudence, conducting the business carried on by the defendant, and in White's place and stead, might or ought to have foreseen, in the light of the attending circumstances?"

There was no error in refusing to submit these questions. The first question was so worded as to be almost certain to confuse any ordinary juryman. Not only is it puzzling by

reason of its involved verbiage, but it is readily seen that, whether it was answered in the affirmative or negative, no light would be cast upon the issues in the case. The other questions are but dependent upon the first; hence, if the first question was rightly refused, there can be no error in refusing the others, because they really ask no questions at all, unless a certain answer has been previously given to the first. But it is vigorously claimed that the principle embodied in these questions should have been placed before the jury either in the form of a question or an instruction, although no instruction was asked on the subject. The principle which is supposed to be presented by these questions is the familiar one, which has been frequently stated, namely, that the test of proximate cause is whether a person of ordinary intelligence and prudence, under similar circumstances, ought to have expected that an injury would occur by reason of his negligent act. *McGowan v. C. & N. W. R. Co.* 91 Wis. 147. The sixth interrogatory of the verdict bears upon this point. It is as follows: "If you answer the fourth interrogatory in the affirmative, did said Gang Foreman White have reason to anticipate and apprehend that his action in the premises was liable to result in injury to the plaintiff?" In submitting this question the court charged the jury as follows: "This is another question in the same form, because there must be not only negligence, but there must be negligence which was the proximate cause of the injury, and must be such negligence as the person guilty of it or committing it had reason to apprehend would result in the injury complained of, or some such injury. It is of no consequence how negligent a man is, if the negligence does not cause the injury complained of. If he is negligent in some matter foreign to the suit, it is a matter not even permitted to be proved. It is not enough to prove a man was careless. You must prove he was careless as to the very matter about which you allege his negligence. It is not

enough to prove negligence, unless you prove it was the proximate, direct, immediate cause of the injury, and of any injury which he had reason to apprehend would result. So it is of the first importance that you should decide, first, whether the gang foreman was guilty of negligence which was the proximate cause of plaintiff's injury, and, second, whether that negligence was such that he had reason to apprehend that it would or was liable to result in injury to the plaintiff." By this question, and under these instructions, it will be readily seen that the judge told the jury practically that the question was whether White ought to have apprehended that injury to the plaintiff would probably result from his negligent act. This was manifestly correct. Whether White ought to have apprehended the probable injury to the plaintiff as the result of his act was and is one of the crucial questions in the case. It would have been eminently proper to have instructed the jury that, if an ordinarily intelligent and prudent person would have apprehended such a result, then White ought to have apprehended it; and doubtless the judge would have added this instruction had it been asked, but it was not asked, and we cannot conceive that the jury could be misled by the failure to give it. Such must have been the practical effect of the question and instructions as given.

Exception is taken because the court refused to submit a number of other questions to the jury. Among these are the following: "Did the plaintiff have control over the means, time, and manner of chaining the car?" "Did the plaintiff have control over the means with which and the manner in which he should be protected while chaining the car?" Also a number of questions embodying the inquiry whether the plaintiff took such precautions for his own safety as men of ordinary intelligence and prudence would have taken under the same circumstances. The first

two questions above quoted refer to evidentiary facts, not necessary to be decided in the verdict. The last series of questions referred to are covered by the verdict and the instructions of the court. In submitting the twelfth interrogatory the judge said to the jury: " The twelfth interrogatory continues the same subject by putting to you the question whether or not, in view of all the precautions which he had adopted, and in view of all the circumstances surrounding him, had he any reason to apprehend that he would be injured while chaining said car? His want of ordinary care, if it existed, must have been of such a nature as to proximately cause or contribute to the injury of which he complained, and of such a nature as to charge him with the duty of apprehending the consequences of such want of ordinary care,— such a nature that a reasonable man, under like circumstances, would have apprehended the danger which followed." It is contended that the ninth finding is contrary to the evidence, and shows passion and prejudice. The wording of the question is unfortunate, and it is difficult to determine just what was meant by it. Doubtless the emphasis should be on the word " *any*," and probably the jury meant that the plaintiff was not at liberty to adopt any precaution he pleased while chaining a car. Understood in this sense, there was evidence to support the answer. We do not see, however, that the question and answer dispose of any material issue in the case, and, as we consider the verdict entirely complete without them, they become immaterial.

There are some questions raised upon rulings on evidence, none of which we deem essential to even state. We have discovered no prejudicial error in any of the rulings. The special verdict is quite full and complete, and, with the exception of the ninth question and answer, tells a plain and consistent story, and one which justifies the judgment ren-

dered.   The judge's charge was full and fair, and the whole record impresses us strongly with the idea that justice has been done with no material error.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied November 24, 1896.