ZARTNER, by guardian *ad litem,* Appellant, vs. GEORGE and another, Respondents.

*October 31, 1913—February 24, 1914.*

*Negligence: Acts not obviously dangerous: Evidence: Custom and usage: Leaving slacking lime uncovered: Lawful work on private property: Attractiveness to children: Liability for injury to trespassers: Questions for jury.*

1. Where an act which was not obviously dangerous but which resulted in injury is alleged to have been negligent, evidence of custom is admissible for the purpose of showing whether or not the act was done as it is usually done under the same or similar circumstances, and thus to aid in determining its character.

2. In such case it is not necessary that either party should have known what the custom was at the time the alleged negligent act was done.

3. It was not an obviously dangerous act to leave uncovered and unfenced a mortar box filled with lime and water over which was spread a thin layer of sand, where such box was upon private property near a building which was being erected and so far from the sidewalk as not to affect travel thereon or be a source of danger to those who remained on the sidewalk or street, even though the box and a neighboring sandpile were attractive to children, who were in the habit of playing about the place.

4. It appearing that it was customary and even necessary at that season of the year to leave mortar boxes in which lime was slacking in the condition in which the box in question was left, a verdict for defendants was properly directed in an action for injury to a boy about seven years old who went upon the premises to play, jumped into the box, and sustained serious burns on his feet from the hot lime.

5. Liability for injury to trespassers on private property should be limited to cases where the act complained of partakes of the nature of gross negligence, obviously endangering the safety of others, or to active negligence committed at the time of injury.

6. The owner of private premises may safely, so far as trespassers are concerned, engage in any lawful ordinary work thereon and conduct it in a customary manner without incurring liability, even though some danger to them may reasonably be anticipated from the condition of the premises created by so conducting his work.

TIMLIN, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action for personal injury. The defendants, who were engaged in mason work in Milwaukee, shortly before they quit work on August 1, 1911, filled a mortar box with lime and water, over which they spread a covering of about two inches of sand, and left it in that condition uncovered and unguarded. It stood on a private lot near a building that was being erected. Plaintiff's testimony shows it stood from four to five feet back from the sidewalk, while that of the defendants is that it was from twenty to twenty-four feet in on the lot from the sidewalk. The box was about four feet wide, seven feet long, and fifteen or sixteen inches deep. Near it on the lot was a pile of sand. The plaintiff, a boy six years and ten months old at the time of his injury, and who lived in the neighborhood of where the box was located, with other boys went on to the lot to play, jumped into the box, and sustained serious burns on his feet from the hot lime before he got out.

The court admitted evidence to the effect that it was the custom of masons in Milwaukee and vicinity to leave mortar boxes situated as this was, unfenced and uncovered, and at the close of the evidence it directed a verdict for defendants. From a judgment entered thereon the plaintiff appealed.

The cause was submitted for the appellant on the brief of *Julius E. Roehr* and *C. H. Hamilton,* and for the respondents on that of *A. J. Hedding,* attorney, and *H. L. Kellogg,* of counsel.

VINJE, J. Was evidence of custom of leaving mortar boxes uncovered in Milwaukee properly received? In answering this question the distinction between proving a custom which is to affect or establish contract relations and a custom which affects, but does not necessarily determine, negligence, should be borne in mind. *Pier v. C., M. & St. P. R.*

*Co.* 94 Wis. 357, 68 N. W. 464. When evidence as to custom is introduced for the purpose of characterizing an act as negligent because not performed in the usual manner, or as non-negligent because so performed, a different rule prevails than when it is introduced for the purpose of affecting or establishing a contract relation. In the latter case it must be shown that the custom is so general and of so long standing that both parties must be presumed to have knowledge of it, and to have contracted with the understanding that it should apply to and affect their contract. *Lemke v. Hage,* 142 Wis. 178, 125 N. W. 440. In the former case it is not necessary that either party should know what the custom was as to how an alleged negligent act was done at the time it was done. Evidence thereof is received for the purpose of ascertaining whether or not the act was done as it is usually done under the same or similar circumstances, in order to aid the court or jury in correctly determining the quantum of negligence in the act complained of. *Nadau v. White River L. Co.* 76 Wis. 120, 43 N. W. 1135. It follows from this that if the act in question is obviously dangerous, then evidence of custom is inadmissible, because custom cannot change the quality of an act. It can only aid in determining what that quality is. Hence, when its quality clearly appears from the act itself, there is no need to invoke the aid of custom to determine it. Our court has consistently so held. *Innes v. Milwaukee,* 96 Wis. 170, 70 N. W. 1064; *Leque v. Madison G. & E. Co.* 133 Wis. 547, 113 N. W. 946; *Bandekow v. C., B. & Q. R. Co.* 136 Wis. 341, 117 N. W. 812; *West v. Bayfield M. Co.* 144 Wis. 106, 128 N. W. 992; *Jensen v. Wis. Cent. R. Co.* 145 Wis. 326, 128 N. W. 982; *Merton v. Mich. Cent. R. Co.* 150 Wis. 540, 137 N. W. 767; *Krawiecki v. Kieckhefer,* 151 Wis. 176, 138 N. W. 710.

In the case at bar the evidence of custom was properly admitted for the purpose of aiding the court or jury in determining the character of the alleged negligent act, which can-

not be said to have been obviously dangerous, taking into consideration the fact that the mortar box was located on private property some distance from the street.    For it matters not whether the plaintiff's or the defendants' evidence is true as to the location of the box.    In either case it was far enough from the sidewalk not to affect public travel thereon or to be any source of danger to those who remained on the sidewalk or street.    The evidence shows that the custom of leaving mortar boxes uncovered in the summer time was general, not only in Milwaukee but in the vicinity thereof, and it was proper to receive such evidence.

The only other matter for consideration is, Should the court have submitted the question of defendants' negligence to the jury?    The evidence showed not only that it was the custom in Milwaukee and vicinity to leave mortar boxes, in the summer, as this was left, unfenced and uncovered, but it showed, without contradiction, that in the summer time it was necessary to leave them uncovered in order not to get the lime so hot that it would burn, and that it was likewise necessary to spread a thin coating of sand over them so that the lime would not get too soggy.    It thus appears that in order to secure the right kind of slacking in the summer time it is necessary to leave the boxes uncovered and to put on a thin coating of sand.    That being so, the only other way that now occurs to us in which the work could be properly done so as not to enable children to jump into the slacking lime would be to fence the mortar boxes in by an inclosure, boy proof, or else protect them on top by a secure wire netting—certainly no small task.

It is conceded that the box with the sand covering the lime and the adjacent sandpile were attractive to children, as is almost every object or appliance that can be mentioned. And the evidence showed, too, that children were in the habit of playing about the place where the work was carried on.    In this respect it was subjected to no greater burden than places

in the vicinity of children usually are, for children are omnipresent, though lacking many of the attributes that should attend such a quality.

So we are squarely faced with the question whether or not a person may upon his own premises pursue a useful occupation in a usual and necessary manner which is not obviously dangerous to others, without incurring liability to trespassers, though he may reasonably anticipate that children may come in upon his premises, meddle with the work, and be injured? In other words, Shall the doctrine of the *Turntable Cases,* or of attractive nuisances, in its widest scope be applied to the conduct of ordinary business carried on in a customary manner upon private property? It has not yet so been applied in our state.

In *Klix v. Nieman,* 68 Wis. 271, 32 N. W. 223, the question arose as to whether the owner of a city lot upon which there was an unfenced and unguarded pond was liable in damages for the death of a boy who, while playing about the pond, fell in and was drowned. The court held there was no liability on the part of the owner. In that case Chief Justice Cole quotes from *Hargreaves v. Deacon,* 25 Mich. 1, where it was held that the owner of a cistern located upon his property was not liable for the death of a child of tender years who fell into it because it had been left uncovered, and then adds: "There is a class of cases which hold the proprietor liable for injuries resulting to children from dangerous machinery left unguarded and so exposed as to be calculated to attract their interference with it," citing *Railroad Co. v. Stout,* 17 Wall. 657; *Keffe v. M. & St. P. R. Co.* 21 Minn. 207; and *Koons v. St. L. & I. M. R. Co.* 65 Mo. 592. The *Klix Case* was quoted approvingly in *Gorr v. Mittlestaedt,* 96 Wis. 296, 71 N. W. 656, where it was held that the owner of a dangerous place near a highway, but far enough removed therefrom so that a traveler must necessarily wander from or pass wholly outside of the highway to become a trespasser in

order to reach it, was not liable for injuries sustained by a traveler who fell into the dangerous hole.

In *Busse v. Rogers,* 120 Wis. 443, 98 N. W. 219, the *Klix Case* is referred to with the statement that the doctrine of what are known as the turntable or attractive nuisance cases was not expressly approved or disapproved in the *Klix Case,* though the reasoning of the cases cited would seem rather opposed to the doctrine than .otherwise. The question as to the soundness of the views of the *Turntable Cases* was expressly left open by the court in the *Busse Case* on the ground that it was not necessary to decide it, because in that case the attractive nuisance was located within the boundaries of a public street.

Counsel for plaintiff, in addition to *Busse v. Rogers, supra,* cite the following Wisconsin cases in support of their contention that defendants' liability should have been submitted to the jury: *Compty v. C. H. Starke D. & D. Co.* 129 Wis. 622, 109 N. W. 650; *Lomoe v. Superior W., L. & P. Co.* 147 Wis. 5, 132 N. W. 623; *Secard v. Rhinelander L. Co.* 147 Wis. 614, 133 N. W. 45; *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60; *Meyer v. Menominee & M. L. & T. Co.* 151 Wis. 279, 138 N. W. 1008. In all of these cases except the last, the attractive appliance or object was in a public street and the injury occurred thereon. In the last case, wires carrying a powerful electric current were allowed to hang within a couple of feet of the top of lumber piles upon which, it was known to defendants, boys were in the habit of playing, and it was held that, owing to the hidden and deadly effect of electric currents, it was a question for the jury to determine whether or not defendants were negligent in leaving the wires so near to the top of the lumber piles. The dangers from strong electric currents are so great and so obvious to those familiar with the effect of electricity, that more strict and stringent rules, and a broader test of liability, should be applied to the safeguarding of persons

·from dangers resulting from coming in contact with such currents than should be applied to the better understood and less hazardous risks resulting from the usual conduct of ordinary business on private premises. It will thus be seen that our court has held that a person may be liable for the maintenance of a dangerous object upon or over private property where such object is deadly in its effect and·the danger of coming in contact with it not obvious to every one, but it has not gone to the extent of holding a person liable to trespassers for mere. ordinary passive negligence in the usual conduct of a lawful and customary business upon his own premises. The cases of *Klix v. Nieman,* 68 Wis. 271, 32 N. W. 223, and *Gorr v. Mittlestaedt,* 96 Wis. 296, 71 N. W. 656, though not squarely decisive of the question, negative the establishment of such a doctrine. The difference in the test of liability that should be applied to objects upon a public highway and to objects outside its limits was clearly stated in *Cook v. Rice Lake M. & P. Co.* 146 Wis. 535, 539, 130 N. W. 953, 132 N. W. 346, where the object complained of was on private property, as follows:

"In this class of cases it must not be forgotten that some real appreciable, efficient fault, tested by the standard of care exercised by the great mass of mankind, is necessary to liability. The mere fact that a person was injured by the act of another, is not sufficient. Further, it must not be forgotten that a person has the right to use his own property in the usual conduct of his business, characterized with the usual incidents."

That the courts in other states are in conflict on the question of the liability of owners of premises to trespassers who are injured thereon, will be seen by a reference to notes on the subject in 19 L. R. A. N. s. 1094, and in 32 L. R. A. N. s. 559, where the cases on the subject are collected. We deem the better rule to be that liability for injury to trespassers on private property should be limited to cases where the act complained of partakes of the nature of gross negligence, ob-

viously endangering the safety of others, or to active negligence committed at the time of injury. Mere failure to exercise ordinary care for the safety of trespassers is not enough. The owner of private premises owes no such duty to them. He may safely, so far as they are concerned, engage in any lawful ordinary work thereon and conduct it in a customary manner without incurring liability, even though some danger to them may reasonably be anticipated from the condition of the premises created by so conducting his work. The trial court, therefore, properly directed a verdict for the defendants.

The language in *Ryan v. Towar,* 128 Mich. 463, 470, 87 N. W. 644, is quite suggestive of the necessity of drawing a line limiting liability to trespassers within the bounds of what is reasonable and practical. The court, in commenting upon the case of *Kansas Cent. R. Co. v. Fitzsimmons,* 22 Kan. 686, said:

"Here we have the doctrine of the *Turntable Cases* carried to its natural and logical result. We have only to add that every man who leaves a wheelbarrow, or a lawnmower, or a spade upon his lawn; a rake, with its sharp teeth pointing upward, upon the ground or leaning against a fence; a bed of mortar prepared for use in his new house; a wagon in his barnyard, upon which children may climb, and from which they may fall; or who turns in his lot a kicking horse or a cow with calf,—does so at the risk of having the question of his negligence left to a sympathetic jury. How far does the rule go? Must his barn door, and the usual apertures through which the accumulations of the stable are thrown, be kept locked and fastened lest twelve-year-old boys get in and be hurt by the animals, or by climbing into the haymow and falling from beams? May a man keep a ladder, or a grindstone, or a scythe, or a plow, or a reaper, without danger of being called upon to reward trespassing children, whose parents owe and may be presumed to perform the duty of restraint? Does the new rule go still further, and make it necessary for a man to fence his gravel pit or quarry? And, if so, will an ordinary fence do, in view of the known pro-

pensity and ability of boys to climb fences? Can a man nowadays safely own a small lake or fish pond? and must he guard ravines and precipices upon his land? Such is the evolution of the law, less than thirty years after the decision of *Railroad Co. v. Stout* [17 Wall. 657], when, with due deference, we think some of the courts left the solid ground of the rule that trespassers cannot recover for injuries received, and due merely to negligence of the persons trespassed upon."

To this the court might have added that there is a growing tendency to make everybody responsible for the safety of children except their parents. This remark is made in no spirit of levity, but in the full appreciation of the obligation that rests upon every one to protect them within all reasonable bounds. The duty to safeguard them, however, rests primarily upon their parents, and such duty should not without cause be shifted upon the shoulders of strangers. Parental responsibility is in danger of becoming a vanishing quantity in this age of progress. The law should not, without effort, let it entirely disappear. These remarks can the more properly be made in this case, because the facts are such that no one can attach any blame to plaintiff's parents for the regrettable accident that befell their son. Nor can the boy himself be blamed. It is one of those, by no means rare, instances where a boy, owing to his irrepressible instinct for play, meets with disaster through the fault of no one. In such case the burden must be borne by him upon whom misfortune places it.

*By the Court.*—Judgment affirmed.

TIMLIN, J. (*dissenting*). In this case the mortar box was not on the premises of the defendants nor upon those of the plaintiff. The defendants were contractors, having their mortar box lawfully on the premises upon which they were engaged at work. There was a pile of sand beside the mortar box. The premises were open to the street and children of the neighborhood were, to the knowledge of defendants, ac-

customed to play around this mortar box and sand. It is quite a technical refinement to call such children trespassers. If they must be classified, they were rather licensees, namely,. persons there by passive acquiescence of the owner. Knowing of this condition, the defendants went away neglecting to cover or protect the mortar box containing water-slacked lime, having a deceptive and inviting covering of about an inch of sand thereon. It was for the jury to say whether the defendants were negligent in so doing. Judicial disapproval of the so-called *Turntable Cases* should be reserved, I think, until a case of that kind occurs. This is not such a case. I do not think it is necessary to express further disapproval of the opinion.