KLEMENS, Appellant, vs. MORROW MILLING COMPANY, Respondent.

*May 5—June 1, 1920.*

*Negligence: Sightseer in mill: Frequenters, licensees, and trespassers: Duty to furnish safe place to work.*

An employee of a mason contractor doing work on an outside wall of the boiler room of a mill, who during the noon hour, for pleasure, wandered through the mill and was injured in using a so-called manlift or Humphrey elevator having no safety device, was a trespasser, and not a licensee, within sub. (5), sec. 2394—41, for whom as well as for employees sec. 2394—48 requires an employer to make the place of employment reasonably safe.

APPEAL from a judgment of the circuit court for Milwaukee county: BYRON B. PARK, Judge. *Affirmed.*

The defendant *Morrow Milling Company* had purchased, shortly before November, 1917, from the former owner and operator, the cereal milling plant and the premises here in question.

Plaintiff was employed by one Andrew Tophooven, a mason contractor, to work as helper in the doing of some mason repair work for the defendant company on the outside brick wall of its boiler room, which was on the southeast corner of the premises. Defendant was to pay Tophooven for this work at an agreed price per hour. Tophooven had done work about the premises at various times for several years prior to defendant's purchase of the premises. During the noon hour of November 5th, after the two had been eating their lunch inside the yard of defendant's premises, Tophooven suggested that they go through the main building for the purpose of seeing how the oatmeal was made which the defendant was then furnishing to the United States government under a war contract, and that they would also at the same time be able to get a view of the city from the top of the six-story building.

Inside this main building which the two entered from the yard and some 145 feet from where they had been working and about a similar distance from their lunching place, there was in operation a so-called manlift or Humphrey elevator. This consisted of a fourteen-inch belt running over one pulley situated on the ground floor and an upper one nine and one-half feet above the top or sixth floor; through each of the intermediate floors was an opening wide enough to permit the passage of the belt, together with the small platforms or steps attached to said belt, and at distances of about every fifteen feet. There was a rope on each side of the elevator which enabled a person riding on the elevator to stop the same. This manlift was run by the mill machinery at such rate of speed as to permit the stepping off or on of persons desiring to go up on the one side thereof or down on the other. At the time of the accident there were no safety devices on it which would automatically prevent the occurrence of that which happened in this instance.

Tophooven had been through the building a number of times before and had also used this manlift. Nothing was said by either Tophooven or the plaintiff to any person connected in any way with defendant's employment with reference to the proposed use of such manlift by either of them.

On arriving at the foot of this manlift Tophooven stepped upon one platform or step thereof and plaintiff stepped on the succeeding one as it passed upwards. As Tophooven reached the level of the third floor he stepped off onto such floor, apparently because the conveyor seemed to be overloaded, and plaintiff then passed on beyond the third floor and was told by Tophooven to proceed to the top floor and he, Tophooven, would follow as he did by stepping upon the next step below the one still occupied by the plaintiff. Plaintiff continued upward, and as he arrived through the upper floor he perceived that the conveyor on which he was then standing would, unless stopped, carry him on and

over the roller, from which position he was likely to be precipitated to the floor.

He testifies that he did not know how to stop the conveyor by the use of the rope attached to the side thereof and called out to Tophooven to stop the same. Nothing was done, however, by either in that regard, and as the conveyor passed over the top of the roller plaintiff was dropped from the height of about nine and one-half feet to the level of the sixth floor, sustaining serious injuries.

Plaintiff commenced this action charging Andrew Tophooven, as well as the *Morrow Milling Company,* with a breach of duty to him resulting in his injury.

Upon the trial the action was dismissed as to Tophooven and no question raised as to such ruling on this appeal. Defendant moved for a directed verdict at the close of the testimony, ruling on which motion was withheld until after the return of the special verdict. The special verdict as answered was in substance as follows:

(1) The plaintiff was injured by being carried over the pulley. (Answered by the court.)

(2) The *Morrow Milling Company* failed to furnish and use such safety device in connection with this manlift as was reasonably necessary to render its place of employment safe for frequenters thereof.

(3) Such failure was a proximate cause of plaintiff's injury.

(4) The *Morrow Milling Company* was negligent in not posting notice warning frequenters against using this manlift.

(5) Such negligence was the proximate cause of plaintiff's injury.

(6) There was no want of ordinary care on plaintiff's part proximately contributing to his injury.

(7) The plaintiff's damages were $10,000.

The trial court charged the jury on this special verdict that they were to assume that the plaintiff was a frequenter

of defendant's place of employment under sec. 2394—48, Stats., which reads, so far as material, as follows:

"Every employer . . . shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. . . ."

The term "frequenter" as there used is defined in sub. (5), sec. 2394—41, as follows:

"The term 'frequenter' shall mean and include every person, other than an employee, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

After verdict the court disposed of the motion made by defendant for a directed verdict by holding, in substance, that the plaintiff was a trespasser rather than such frequenter as specified in the foregoing statutes, and that, being a trespasser, the defendant owed him no duty under said sec. 2394—48, *supra,* and that there was therefore no liability on its part. He also held that there was contributory negligence on the part of the plaintiff both in undertaking to ride up alone, being in entire ignorance of the working of the elevator, and also in failing to step off from the same before the injury. Upon such holding the court directed judgment in favor of the defendant *Morrow Milling Company,* notwithstanding the verdict, and dismissed the complaint upon the merits, with costs and disbursements; such ruling being without consideration of or prejudice to defendant's motions subsequent and relating to the special verdict. From judgment so ordered plaintiff has appealed.

For the appellant there was a brief by *William L. Tibbs,* attorney, and *Glicksman, Gold & Corrigan,* of counsel, all

of Milwaukee, and oral argument by *Mr. Tibbs* and *Mr. W. D. Corrigan.*

For the respondent there was a brief by *Williams & Stern* of Milwaukee, and oral argument by *Burdett F. Williams.*

ESCHWEILER, J.    The safe-place employment statutes quoted above have undoubtedly broadened the field of those to whom there is and was a common-law duty to keep such premises as are here involved reasonably safe so as to now protect and include those upon such premises under the rights belonging to the class described under the somewhat vague and indefinite term of "licensees."

Plaintiff contends that he was at the time of the injury such a licensee, that is, there with the implied consent of the defendant *Milling Company,* or that at least the court should not have disposed of such question as a matter of law, as it did, but should have submitted to the jury a question framed so as to require them to determine whether or not, under the facts and circumstances, the plaintiff was a frequenter or a mere trespasser.    It is urged in that behalf that the testimony showed such a known customary use of said premises by others than plaintiff sufficient to support a finding of a jury that the plaintiff was within the class of licensees rather than that of trespassers.

The record, however, discloses that most of the testimony relied upon by plaintiff appellant as to the former use of such elevator was admitted as against the defendant Top-hooven, plaintiff's employer, only, and while the action was still pending as to him, and mostly as to a period prior to the ownership and occupancy of the premises by the defendant corporation.    Even were the testimony so received admissible as against defendant respondent, a point which it is not now necessary to pass upon and which is therefore not decided, still it is not sufficient, in our judgment, as a basis for a conclusion by a jury that there had been a customary use of the premises for such purposes, and known

to defendant, as plaintiff was making at the time of the injury.

It had been used by persons other than employees of the company operating the mill, such as those representing insurance companies for the purpose of inspection; those seeking employment in the mill; and those seeking proper or necessary information from employees or foremen on such premises. As against the respondent, Tophooven clearly had no authority or power to invite the plaintiff into the mill building or to get upon the elevator. There was no invitation, express or implied, extended to plaintiff by respondent on this occasion or for such purpose. There was nothing about plaintiff's employment as helper to Tophooven in the mason work on the wall of the boiler room making it necessary or convenient for plaintiff to enter the mill building or that would require defendant to anticipate his so doing; post notices warning plaintiff not so to do, or to take other steps to guard against plaintiff so doing. He was there solely for his own pleasure, purpose, and convenience. He must be deemed, under the facts and circumstances in this case, to have been a trespasser at the time of the injury and to be doing what he did as an invasion of the owner's rights of possession and privacy on his own premises. Such an invasion of the owner's rights is a trespass irrespective of what may have been the intentions of him who so invades the premises. The act is none the less a trespass though it be done innocently and without any wilful intent to harm or violate the owner's rights. 29 Cyc. 444; *Zartner v. George,* 156 Wis. 131, 145 N. W. 971.

The trial court was right in his disposition of the case upon this point, and it makes it therefore unnecessary to consider the other questions raised and discussed.

*By the Court.*—Judgment affirmed.