# CASES DETERMINED

# January Term, 1921.

---

BONNIWELL, Administrator, Respondent, vs. MILWAUKEE
LIGHT, HEAT & TRACTION COMPANY, Appellant.

*March 9—April 5, 1921.*

*Electricity: Degree of care in handling: Boy .climbing tower carry-
ing transmission lines: Negligence: Reasonable anticipation
of injury: Trespassers and licensees: Evidence: Customary
mode ·of construction: Contributory negligence.*

1. In dealing with so dangerous and mysterious an agency as elec-
   tric wires, a public utility maintaining a high-tension trans-
   mission line must use a high degree of care to avoid injury
   to persons who are lawfully liable to come in contact with
   the wires.
2. In an action for the death of a boy who climbed a tower carry-
   ing electric wires and was killed by a wire strung on poles
   near the tower, the testimony of one of defendant's employees
   that he did not know of any other place on the line where a
   wire approached within fifteen inches of the tower at a point
   within thirty-five feet from the ground was not equivalent
   to a statement that the arrangement of the wires departed
   from the usual mode of construction.
3. A company maintaining high-tension electric lines which also
   owned other wires strung on wooden poles which at one
   point were within twelve or fifteen inches of the corner of
   one of the towers was not bound to anticipate that a boy
   would climb the tower to a height of thirty feet, circle around
   it on the narrow crossbars and take hold of such wire near
   the tower in reliance on the fact that it was "padded," though
   it knew boys played in the field where the towers were, where
   it ·was shown that its employees had never seen boys on the
   towers and no other child had ever attempted to perform such
   dangerous feat. *Meyer v. Menominee & M. L. & T. Co.*
   151 Wis. 279, distinguished.

Bonniwell v. Milwaukee L., H. & T. Co. 174 Wis. 1.

4. A boy climbing one of the towers to a height of thirty feet and circling it on the narrow crossbars was a trespasser, and the company owed him no active duty of protection, whether or not he was a licensee while playing at the foot of the tower.
5. Owners of private property are not insurers against all accidents which may happen on their premises by reason of dangerous agencies thereon.
6. A boy eleven years old of average intelligence was negligent as matter of law in climbing and circling one of the towers where they bore danger signs plainly visible and he had been warned of the danger by his father and just before the accident was warned by a companion.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

Action to recover damages for the death of plaintiff's minor son. Trial before a jury resulted in judgment for plaintiff upon a special verdict. Defendant appeals.

The deceased boy, Clarence F. Bonniwell, Jr., was about eleven years and four months of age at the time of the accident. He attended school and was in the third or fourth grade. The school was about two and one-half miles from Clarence's home, and about half way between was the "Nashota" stop and shelter station on defendant's electric interurban line at a point where it was crossed by a road. It was in a farming district. Along the interurban right of way there was also placed defendant's high-tension transmission line, consisting of wires carrying 66,000 volts strung upon steel towers about fifty-seven feet high constructed of uprights and cross-braces. There were also the trolley wires and certain other wires supported by rows of ordinary wooden poles on either side of the tracks and about half as high as the towers.

Near this "Nashota" stop the line changed directions and there was a triangular field a few hundred feet in both dimensions lying on one side of the interurban tracks and in which were placed three of these towers. Each tower bore one sign in black letters on a red field, reading "Danger, High Voltage." Each had ladder steps on one corner start-

ing about eight and one-half feet from the ground. This piece of land belonged to defendant and was inclosed, with the tracks, by a woven-wire fence with a strand of barbed wire on top. Entrance could be had to it, however, from the road crossing by passing over the cattle-guards, and also from the adjacent roads at one or two points where there were holes in the fence large enough for boys to get through. There were one or two paths across the field from the tracks to these holes, worn by school children and others.

Clarence and other boys frequently walked on the tracks from and to school, and not infrequently played in this triangular field. Defendant's employees on passing cars had seen them there and had not ordered them off. The boys had also at times climbed the towers a few feet and performed gymnastic exercises upon the cross-braces. There was no evidence, however, that any had climbed above the point where the ladder commenced or that any employee of defendant had ever seen boys on the towers. The boys understood that there was danger from wires higher up on the towers; Clarence had been warned of them by his father and other boys.

On the day of the accident Clarence with other boys had been given a ride from school to the neighborhood of this field. Here he and Edwin Pfister, a boy twelve years of age, got off to continue in the direction of their homes, while the other boys continued to ride in another direction. Somewhat aimlessly the two boys entered the field. The evidence differs as to whether they entered through a hole or over the cattle-guards. What happened after this is described by Edwin alone. He testified that Clarence said the towers were not as high as their windmill which he had climbed many times and that he wanted to climb a tower. Edwin asked him not to do so, but he "shinned" up and pulled himself up by the cross-braces to the ladder, consisting of iron spikes or foot-rests, and then climbed up further, circling the tower twice on the cross-braces as he came to them on

the way up. As he was making a circuit on some of the cross-braces at about half the height of the tower, he came near one of the wires strung on the wooden poles. The wire carried nominally 3,300 volts and came within twelve or fifteen inches of the tower at one of the corners away from the ladder. To prevent arcing between it and the tower as it swung in the wind, a piece of rubber tubing about three feet long had been placed about the wire at this place and wound with tape. This was defendant's customary method of preventing arcing at places where the wire came close to other objects. It did not afford safe insulation for a person to handle the wire, nor was it intended as such.

At this point Edwin testified that Clarence said: "Here is the feed wire, I guess." Edwin asked him to come back or away from it, but he said: "It is padded." Edwin said: "Even so, come back," or, "Never mind the padding, come on back," but Clarence took hold of it. He received a severe shock and burns from which he died four days later.

The jury by their special verdict found negligence on the part of defendant and that there was no contributory negligence. Judgment was rendered for the plaintiff.

For the appellant there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondent there was a brief by *Austin, Fehr, Mueller & Gehrz* of Milwaukee, and oral argument by *Arthur A. Mueller.*

JONES, J. This is one of a class of cases which must always appeal strongly to the sympathy of every one cognizant of the facts. A bright, spirited boy, full of the buoyancy of youth, thoughtless of danger, undertakes a too hazardous venture and comes to his untimely death. We are confronted with the question whether upon the record and the facts proved the verdict can be sustained and the owner of the property on which the accident happened can be held responsible.

Bonniwell v. Milwaukee L., H. & T. Co. 174 Wis. 1.

The grounds of negligence on the part of the defendant which are relied on are that the trolley poles, steel towers, and spikes or foot-rests were attractive and alluring to children; that the fence was out of repair; that children had been allowed to play on the land of defendant and had loitered about the towers and poles as defendant knew; that one of the towers was within 100 feet from a pathway; that the high-tension wire which the boy touched was so strung upon the wooden poles that it passed within easy reach of the steel tower; that defendant had failed in its duty to so manage its current as to protect children, and to so construct and operate its towers and wires that it would be impossible for children of immature age to reach the wires; to use properly insulated wires; and generally to take such other precautions as would have been adequate to prevent the boy from coming in contact with the wires.

The defendant was bound to use that degree of care which was reasonably adequate to meet and avoid the dangers which ought to be anticipated under the circumstances. In dealing with so dangerous and mysterious an agency as electric wires, it is evident that persons in their management must use a high degree of care to avoid injury to those who are lawfully liable to come in contact with them. *Nagel v. Hake,* 123 Wis. 256, 101 N. W. 409; *Wilbert v. Sheboygan L., P. & R. Co.* 129 Wis. 1, 106 N. W. 1058.

In this case there was no proof that before this unfortunate accident any persons except the employees of defendant had ever attempted to climb any of the towers in question. The foot-rests or spikes, called ladders, were eight and one-half feet from the ground. It is true that boys had climbed as high as the first cross-bar and the lowest foot-rest of the ladder, about seven and one-fourth and eight and one-half feet, respectively, above the ground, and had swung upon the cross-bar. The towers were of standard construction, and the only difference suggested is based on the testimony of an engineer, employee of defendant, who on cross-examination was asked this question: "Do you

know of any other place on the line from West Allis to Kilbourn where a wire approaches within fifteen inches of the tower, at a point within thirty-five feet from the ground?" and answered: "I don't know of any."  This was hardly equivalent to a statement that the arrangement of wires at this point departed from the usual mode of construction.  It is argued that this partial insulation which was used to prevent the arcing of the current from the wire to the tower when the wire was swayed by the wind should have been made a complete insulation or that there should have been an extra sign and warning that it was dangerous.

This brings us back to the question whether the defendant was reasonably bound to anticipate that boys would climb to a height of about thirty feet by circling around upon the narrow cross-bars.  The case most relied on by respondent's counsel is *Meyer v. Menominee & M. L. & T. Co.* 151 Wis. 279, 138 N. W. 1008.  In that case there was a lumber pile about twenty-four feet high, easy of access for children by steps of projecting boards.  It was adjacent to a much traveled private road, ·did not belong to defendant and was not on defendant's property, and large numbers of children, as defendant knew or ought to have known, had long been accustomed to play upon the lumber pile.  A boy playing on the lumber was killed by contact with sagged electric wires very defectively insulated, twenty-one inches above the top of the lumber.  Defendant had been notified of the condition of the wires and poles eight months before the accident.  The wide distinction between that case and the instant case seems to us too obvious to call for discussion.  Another case cited and quoted by respondent's counsel and one more analogous to the present case is *New York, N. H. & H. R. Co. v. Fruchter,* 271 Fed. 419.  In that case a boy climbed upon some portion of a bridge which had some apparatus of electric wires on top, and was injured.  It does not appear how difficult a feat it was for the boy to climb to the height of the wires.  Although the rule is different

in New York where the accident happened, the court felt bound to follow the rule of the federal court as declared in *Railroad Co. v. Stout,* 17 Wall. 657, which is recognized as the leading case declaring the turntable or attractive-nuisance doctrine. In the case of *Zartner v. George,* 156 Wis. 131, 135, 145 N. W. 971, Mr. Justice VINJE used this language:

"Shall the doctrine of the *Turntable Cases,* or of attractive nuisances, in its widest scope be applied to the conduct of ordinary business carried on in a customary manner upon private property? It has not yet so been applied in our state." See, also, *Klix v. Nieman,* 68 Wis. 271, 32 N. W. 223; *Bruhnke v. La Crosse,* 155 Wis. 485, 144 N. W. 1100.

We are not prepared to apply the doctrine in this case. The rule laid down in *Railroad Co. v. Stout, supra,* has been much criticised, and has been rejected in many states. In some cases it has been asserted that modern tendencies are toward a restriction rather than an extension of the rule there declared. 20 Ruling Case Law, 81; 19 L. R. A. N. S. 1106.

There are several important facts which distinguish this from any case cited by respondent's counsel. There was no proof that other children had performed or attempted the dangerous feat undertaken by Clarence. When the injury happened he was in a position not easily accessible to children. He met with the injury while engaged in an unusual and extraordinary act. It is argued by respondent's counsel that Clarence was a licensee and entitled to the degree of care which that relation requires. It is not necessary to decide whether he was a licensee while playing at the foot of the tower. But it seems very clear to us that while circling the tower and climbing to the height he reached he was a trespasser and that defendant owed no active duty to protect him in the act he was attempting. *Wendorf v. Director General of Railroads,* 173 Wis. 53, 180 N. W. 128.

The owners of private property, whether they be the owners of homes, business places, or traction lines, cannot be

Bonniwell v. Milwaukee L., H. & T. Co. 174 Wis. 1.

held insurers against all accidents which may happen on their premises. The consequences which would result from holding the owners of property to the extreme degree of care insisted upon in this case are well pointed out in two opinions by Mr. Justice VINJE in *Zartner v. George,* 156 Wis. 131, 145 N. W. 971, and *Emond v. Kimberly-Clark Co.* 159 Wis. 83, 149 N. W. 760.

We hold that the defendant was not bound to anticipate that a child or children would climb the tower in such a manner as to be endangered by its wires, and that the question of the negligence of defendant should not have been submitted to the jury.

Was there such contributory negligence as should prevent a recovery? Clarence was a boy over eleven years old, of average intelligence. He must have known that the circling of the tower alone was attended with some danger. The statement of facts shows that he knew the dangerous character of electric wires. He had been warned by the danger sign plainly visible on the tower, by his father, and soon before the accident was warned by his companion. Nevertheless he grasped the wire relying on the fact that it was "padded" and assumed that it was not dangerous. Although we give due consideration to the fact that the rules as to negligence applying to children and adults are quite different, we are forced to the conclusion that on the plaintiff's own showing on the uncontradicted evidence, and as a matter of law, contributory negligence was the direct cause of the death.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.