## Carl Rasimas, Administrator, Plaintiff in Error, v. Chicago Railways Company et al., Defendants in Error.

### Gen. No. 26,745.

1. STREET RAILROADS—*count of declaration on which cause of action for death of boy rests.* In an action for damages for the death of a boy killed by the derailment of a street car, which was being switched into a car barn, and the collision between it and another car, where five counts of the declaration were predicated on the theory that intestate was in a public street at the time of his injury, and the undisputed evidence showed that he was riding on a step of the car and the sixth count so alleged, the cause of action rests on the sixth count only.

2. STREET RAILROADS—*question presented in action for death of boy who was trespasser or licensee.* In an action for the death of a boy killed while a trespasser or licensee on one of defendant's street cars, where there was no proof of wantonness or wilfulness, the only question presented is whether the evidence tended to make a prima facie case of attractive nuisance as set forth in the pleadings.

3. NEGLIGENCE—*when conveyance using public street is not attractive nuisance.* A conveyance, whether a public or private one, in legitimate use of a public street is not an attractive nuisance because of the propensity of young boys to attach themselves to moving objects.

4. STREET RAILROADS—*when empty street car is not attractive nuisance.* An empty street car with both vestibules closed while being switched by an employee into car barns was not an attractive nuisance so as to require the company to keep another employee on or near the car to warn boys from trespassing thereon.

5. STREET RAILROADS—*when exclusion of evidence in action for death of boy is not error.* In an action based on the theory of attractive nuisance, for the death of a boy while riding on the step of a closed car which was being switched into a car barn, it was not error to exclude evidence of a custom to store cars on the main tracks in front of the barn and for boys to play on the empty cars and cars being switched, with permission of the man in charge, where there was nothing to indicate negligence in leaving the line of empty cars on the track at that point and their being there had no relation to the cause of action alleged.

6. STREET RAILROADS—*what fact insufficient to establish liability for death of boy.* Though the driver of a street car which was being switched into car barns permitted boys to ride on the rear step, that fact would be insufficient to establish liability of the company for the death of one of the boys because the license given would impose no obligation to take precautions for their safety, or to run the cars in any respect differently from what they would be run if the boys were not there, and also because there was no evidence that the driver, if he permitted the boys to ride, was acting within the scope of his employment.

Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1921. Affirmed. Opinion filed December 30, 1921.

DILLARD B. BAKER, for plaintiff in error.

HARRY P. WEBER, GEORGE W. MILLER, ARTHUR J. DONOVAN and ARTHUR A. ANDERSON, for defendant in error; JOHN R. GUILLIAMS and JOHN E. KEHOE, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

Plaintiff in error brought an action against defendants in error under the Injuries Act to recover pecuniary damages to the next of kin of Carl Rasimas, Jr., deceased, on account of a collision of two of defend-

ants' cars resulting in his death. At the close of plaintiff's evidence there was a directed verdict for defendants, thus presenting the question whether the evidence had any reasonable tendency to support the declaration.

The declaration consists of six counts. Each alleges that defendants owned and controlled a certain street railway in Chicago and operated cars thereon, and in connection therewith owned and maintained a car barn and switch tracks leading therefrom to the main track in a public street, and that the boy was of tender years and fatally injured because of defendants' negligent management and control of the same.

The first count charged general negligence in the management and control of such instrumentalities. Each succeeding count repeated the material averments in the preceding counts. The second count further alleged that the location of the barn and switch tracks was in a densely populated district where children of tender years were permitted to play, with defendants' knowledge, and that the injury complained of resulted from switching the car in question in a negligent manner and thus causing it to be derailed against the boy. The third count further alleged failure to keep the switch tracks in a proper and safe condition by reason of which the car jumped the track, swung across the street and struck plaintiff's intestate. The fourth count further alleged a defective condition of the car whereby it swung across the street catching and crushing said intestate. The fifth count further alleged the handling of the car by one incompetent and uninstructed in doing so whereby it was thrown from the track with force and violence against said intestate on a public street.

All of said five counts are predicated on the theory that the intestate was on a public street at the time he was injured. The evidence is undisputed that he was riding on a step of the car when the accident

Rasimas v. Chicago Railways Co., 223 Ill. App. 288.

happened.   The sixth count so alleges.   It further alleges that it was the custom of defendants to permit children of tender years to be about said cars and barn, to permit boys of tender years to ride on the cars as they were switched, to handle the trolley rope, to compensate them for so doing, to ride in and out of the barn, and that said cars, barn and equipment constituted an attractive nuisance and that defendants disregarded their duty to properly protect the children and warn them of the dangers.

It thus appearing that the boy was injured while riding on the car, and not while he was on a public street, and that he was not a passenger or invited to be such, but either a trespasser or a licensee, it is evident that the cause of action rests on the sixth count only.   It being fundamental that, whether a trespasser or a licensee, defendants owed him no duty except to refrain from wantonly and wilfully injuring him, and there being no proof of wantonness or wilfulness or otherwise to support an action under any of the first five counts, the question presented is whether the evidence had any tendency to make a prima facie case of an attractive nuisance, as set forth in the sixth count.

The barn in question occupied an entire block on the north side of Courtland street, an east and west thoroughfare.   The car tracks on that street ended one block west of the barn.   The cars were run into different divisions of the barn called "bays."   From each bay a switch track ran to the main track curving to the west.   The car in question was switched from one bay to the main track to be run back into a bay further west.   An employee, called the "placer," did such switching.   The car had a vestibule at each end.   He stood by the controller in the front vestibule as the car was run onto the main track to the west. When it stopped he then passed through the car to the east vestibule to operate the car back to the switch.

On the occasion in question both vestibules were closed. He alone was in the car. No other men at that hour were around the barn. While the car was thus running from the barn, deceased and another boy jumped onto the step on the right side of the rear vestibule and rode thereon until the car stopped on the main track. After the placer had passed through to the east vestibule for the purpose of running the car back they again jumped on the step on the right or south side of the rear vestibule and were riding back, when for some unexplained reason, unless because of the speed with which it was driven, the car as it turned into the switch track became derailed and its rear was thrown from the track against the rear of another car standing on the main track. Deceased was crushed between the ends of the two cars and died 4 days later. His companion jumped off before the collision.

It is clear that under these circumstances the boy was a trespasser or licensee to whom defendants owed no other duty than to refrain from wantonly or wilfully injuring him, unless it can be said that the facts bring the case within the exception of an attractive nuisance which raises the duty to protect or guard children of tender years from the dangers it invites. The case, therefore, need be considered only with reference to such a duty, if it existed. The other counts all allege acts of negligence which have no relation whatever to the doctrine of attractive nuisance; nor was there any proof of them. There was no proof of a defective car or of a defective track or switch or of an incompetent employee.

Does the case come within the doctrine of an attractive nuisance?

Deceased was nearly 12 years old. He and about a dozen other boys of that immediate neighborhood were playing a game called "spread, drop hands and run," in the course of which they spread over several adjoining blocks, fleeing to escape the boy called "it."

They had been playing in that locality for nearly an hour when about 7:30 p. m. (in the month of August) some of the boys had worked back around or near the car barn. Deceased and one or more had seated themselves on a bench outside the barn to rest. As the car in question came out of the barn, deceased and one of them jumped on the step, getting off when the car stopped and on again at the other end of it, riding, as before stated, until the accident. It does not appear that the driver of the car knew that they had got on the steps, or had seen them or could see them from his position in the front vestibule, where he necessarily had to be in the performance of his duty. There was evidence that these boys were accustomed to play in the streets near there and around the barn.

If he did not know and had no notice of their presence on the car step he cannot be charged with any special duty to warn them unless the case comes within the doctrine of an attractive nuisance. The only attractive or enticing feature was the opportunity to ride on the car during these switching movements. It is generally recognized that boys have a propensity or instinct which leads them to attach themselves in some way to a moving object, especially some form of conveyance. But no case has been called to our attention where because of such a propensity a conveyance, whether a public or private one, in legitimate use on a public street has been held to be an attractive nuisance. All authorities seem to be to the contrary. Otherwise there arises a duty on the part of the owner or one operating the conveyance to guard against boys jumping on or clinging to it. The doctrine has not been extended to such an unreasonable and impracticable application. In the instant case the duty of the driver required him to be at the other end of the car from where the boys jumped on it, and to look ahead of him and not behind to see if boys were trying to

get on the car. The vestibules were closed and offered them no invitation to get into the car. It manifestly would greatly interfere with the performance of the duties his service called for if the driver were required to stop his car to warn or order boys off the rear steps, even if they would heed the warning after he returned to his post of duty. And it cannot be said that defendants were required to have another employee stationed inside or outside of the car for the purpose of keeping boys away from it. If there was any duty violated by defendants it was the duty thus to keep a guard about the premises to watch the boys and warn them from attempting to ride on the cars. There was apparently no other practical way of guarding them from attending danger.

But we do not think there was any such duty. This is not a case of a car being left unattended, but one in legitimate use where defendants had a right to have it. It was said in *Donaldson v. Spring Valley Coal Co.*, 175 Ill. App. 224, that the doctrine of attractive nuisance as applied in this State is "restricted to things not in use, to things at rest," citing several authorities. Speaking of a railroad with reference to the care and diligence to be exercised in operating its road through public streets, it was said in *Chicago, B. & Q. R. Co. v. Stumps*, 55 Ill. 367, that "the care and caution in this respect are required to be exercised in reference to the proper uses of the street as a thoroughfare of travel, rather than to the safety of persons in wrongfully getting on their cars when running." When that case again reached the Supreme Court in 69 Ill. 409, it said: "It was no part of the duty of the company, even if the detached car had been temporarily left standing on its track, to maintain a guard upon it to warn children from getting upon it or playing about it. The law imposed no such duty." In *Chicago West Div. Ry. Co. v. Hair*, 57 Ill. App. 587, the court said: "Unquestionably, pas-

senger cars as well as teams of all kinds do afford an enticement to children to jump or 'hitch on' and make use of the vehicle in play, but we are aware of no rule making it the duty of those in charge of cars or carriages to be all the while so stationed that boys cannot jump or hitch thereon in mere sport." In *Chicago & W. I. R. Co. v. Roath,* 35 Ill. App. 349, where a 6-year-old boy was run over by a freight car at a street crossing near a public school and thickly settled neighborhood, the court said:

"The attempt to govern this case by the rule that obtains where a defendant has carelessly left exposed to ready access some dangerous machine, in its nature or operation alluring to the instincts of childhood, is not tenable. If steam roads owe the duty of preventing children from climbing on their moving trains at crossings, then the operator of the street car, or the driver of a farmer's cart, or any other vehicle which runs upon the street, and by its movement or its rumble excites a childish desire to mount and ride, must in logic and in reason owe a similar duty, and be alike liable for its nonperformance. Such a doctrine is not founded in justice or reason, and is without the support of legal sanction."

In *Purcell v. Degenhardt,* 202 Ill. App. 611, where a 6-year-old boy ran out and got onto the frame of a steam roller being driven along the street and was injured, the court said: "The application in this State at least seems to be more particularly made to such places, machines and appliances as are not at the time of the injury being used or supervised by those sought to be charged with negligence." In *Chicago Consol. Bottling Co. v. McGinnis,* 51 Ill. App. 325, a child got on the step of a pop wagon where he was not but could have been seen by the driver. On the question of taking reasonable measures to ascertain whether children have attached themselves to vehicles so as to be hurt if they moved, the court said: "There is no such law. It would be more impracti-

cable, applied to ordinary vehicles than to railway tracks or cars in public streets, and it don't exist as to them. (*Chicago & A. R. Co. v. McLaughlin,* 47 Ill. 265.)''

We deem it unnecessary to cite other cases in this State or from other jurisdictions which harmonize with the doctrines stated. If the case is not one for the application of the doctrine of attractive nuisance, then there was no duty to warn the boy or to station a guard around the barn or on the cars to keep boys from jumping on them. The evidence had no tendency to show that the boy was other than a trespasser, or at most a licensee to whom defendants owed no duty except to refrain from wantonly or wilfully injuring him.

The court refused to permit plaintiff to prove that it was the custom to store cars on the main tracks in front of the car barn, and for those boys to play on the empty street cars and cars being switched, with permission of the man in charge. We think the court ruled correctly. There was nothing to indicate negligence in leaving at that point of the line empty cars on the tracks, and their existence there had no relation to the alleged cause of action in the sixth count; and whether or not the boys were accustomed to play around the cars had no tendency in itself, without other evidence which the nature of the circumstances did not permit, to show an attractive nuisance, for, as we have already said, the care required of defendants was with reference to legitimate operation and use of their cars on the public street and not with respect to guarding them against trespassers. Even if the driver had permitted the boys so to ride on the car, that fact would be insufficient to establish liability for two reasons: First, because the license so given would impose no obligation to take precautions for their safety, or to run the cars in any respect different from what they would be run if they were not there (*Illinois Cent. R.*

*Co. v. Eicher,* 202 Ill. 556); and second, there is no evidence in the record that the driver was acting within the scope of his employment or the performance of his duty, if he permitted the boys to get upon the car. Such evidence would be necessary to bind defendants. Without it the offer of custom or permission to board the car was incompetent. (*Chicago Terminal Transfer R. Co. v. Schiavone,* 216 Ill. 275.)

In view of what we have said, it is unnecessary to consider the question whether the doctrine of attractive nuisance can be applied to a normal boy nearly 12 years old, and whether the evidence does not disclose that he was guilty of contributory negligence. If there was no negligence on the part of defendants, there is no cause of action.

We think the evidence had no reasonable tendency to show a state of facts to which the doctrine of attractive nuisance can be applied, and no negligence in any of the respects charged, and, therefore, the court properly directed a verdict for the defendants.

*Affirmed.*

GRIDLEY, P. J., and MORRILL, J., concur.