COFFEY and wife, Respondents, vs. OSCAR MAYER & COMPANY and another, Appellants.

*April 12—May 11, 1948.*

For the appellants there was a brief by *Wilkie, Toebaas, Hart, Kraege & Jackman,* attorneys, and *Hugh F. Oldenburg* of counsel, all of Madison, and oral argument by *Mr. W. L. Jackman* and *Mr. Oldenburg.*

For the respondents there was a brief by *Maloney & Wheeler* of Madison, and oral argument by *Norris E. Maloney.*

ROSENBERRY, C. J.   After the formal allegations in the complaint stating the residence, etc., of the plaintiffs, their relation to the deceased child, that the defendant Oscar Mayer & Company is a corporation engaged in the business of distributing at retail ice in the city of Madison and its environs; that the Hartford Accident & Indemnity Company is the insurance carrier of the defendant Oscar Mayer & Company, it is alleged in the complaint:

"That on June 20, 1947, the defendant through its employee, Oren G. Ellingson, knew that the manner of operation of its ice truck on Whities street in Truax Field consisted of short

hauls, with stops at intervals of approximately every sixty feet, and slow speeds between stops of approximately five miles per hour was likely to and did on previous days naturally attract and induce children of tender age, who followed the ice truck to procure ice chips for personal consumption, to attempt to and who did ride on such truck between stops; that said Whities street in the 2400 block was densely populated with small children who congregated frequently around the ice truck collecting ice chips.

"That on June 20, 1947, the defendant through its employee, Oren G. Ellingson, knew or should have known that permitting or failing to prevent small children of tender age to ride on the ice truck was inherently dangerous to such children due to dangers of the limited physical capacity of such children causing them to fall from the truck upon the pavement or being struck by parts of said truck in falling involving an unreasonable risk of serious bodily injury or death to them while riding upon the truck *to which they were lured by the mode of operation.*

"That on June 20, 1947, the defendant through its employee, Oren G. Ellingson, knew that numerous small children of seven years of age and less had been following the ice truck for several stops previous to the stop at 2428 Whities street and had on at least one prior stop at 2426 Whities street been seated on the right-hand running board of the truck when Ellingson returned to the truck from delivering ice and that he had to tell them to get off the truck.

"That on June 20, 1947, when Ellingson stopped the ice truck at 2428 Whities street he was unable to deliver the ice at the apartment, because the patron was not at home, and when he returned to the truck with the ice the deceased, Daniel Coffey, and his three brothers were seated on the right-hand running board of the truck; that Ellingson told the children to get off the truck which they did to Ellingson's knowledge by stepping a few steps away, directly opposite the right-hand door and window of the truck cab; that Ellingson returned the ice to the rear of the truck and proceeded to the left-hand side of the truck entering the cab of the truck, starting the engine and placing the truck in motion, *carelessly and negligently failing to make any further effort to determine whether the children had remained off the truck in the position they had assumed to his knowledge; that Ellingson carelessly and negli-*

*gently failed to look out of the right-hand window to see if the children were still standing opposite the right-hand side of the truck cab and free from the dangers of the moving truck before placing the truck in motion; that such carelessness and negligence was the proximate cause of the death of Daniel Coffey."*

It is then alleged that Daniel, the deceased, Marvin, aged 7, Melvin, aged 6, and Allen, aged 5, again climbed on the right-hand running board and were there seated when Ellingson put the truck in motion. That Daniel fell while the truck was in motion and was instantly killed. That Daniel was not negligent. In addition to these there are other supporting allegations which are not material upon the consideration of the issues raised by the demurrer.

It is the contention of the defendants, first, that the duty owed by the driver to the deceased under the circumstances of this case was one of ordinary care; second, that the driver of a truck is not responsible unless he knew of the danger to children or should have known it if he had kept a proper lookout.

Plaintiffs contend, first, that the principles of attractive nuisance are applicable to the operation of the vehicle in question and make it the duty of the driver of the truck to anticipate childish impulses; second, that the truck in question was, under the circumstances of this case, an attractive nuisance and that under the circumstances the law regarding attractive nuisances is applicable under the facts of this case. Third, that it is a jury question whether safeguards could have reasonably been adopted to keep children free from the danger zone.

We shall first consider whether the operation of the truck on the street in question under the circumstances of this case made the truck an "attractive nuisance." This court in *Schulte v. Willow River Power Co.* (1940) 234 Wis. 188, 190, 290 N. W. 629, said:

"This doctrine [attractive nuisance], speaking broadly, is that a liability is imposed upon those maintaining inherently dangerous structures or instrumentalities for injuries sus-

tained by children of tender years, who to the knowledge of those maintaining them, are injured while playing on or about them."

Is an ordinary ice truck, being used in the regular course of the defendant's business in the distribution of its product to customers, an inherently dangerous instrumentality? In *Rapczynski v. W. T. Cowan, Inc.,* 138 Pa. Super. 392, 400, 10 Atl. (2d) 810, the court said:

"If we are to treat a truck as an attractive nuisance then there is no limit to this doctrine. Automobiles are seen by the hundreds and almost every family in this country has one; even the small retailer has his truck. We cannot hold that the mere object, a truck or an automobile, as such, comes within the classification; neither did the situation or condition of this truck constitute an attractive nuisance. It was parked at the curb just as myriads of cars are; it had its brakes set and was located on level ground where its position could not be easily changed; it was on the highway where cars are intended to be principally used. Certainly this did not present any unusual allurement."

In *Harris v. Roberson* (App. D. C.), 139 Fed. (2d) 529, a large platform trailer had been parked in a vacant lot behind appellant's (plaintiff's) house. As parked it was not dangerous to children. It had no motor. It was used for hauling heavy equipment, and there was no contention that children ever moved it or could move it. Donald, plaintiff's son, and other boys, were playing on and about the trailer when Roberson, under a contract with the Acker Company, came with his truck to take it away. He ordered the boys to get off and they did so. Roberson then connected the trailer to his truck and climbed into the cab. Donald afterward jumped back on the trailer. Roberson, from his position in the cab, could not see him. When Roberson started to drive away, Donald fell under the right rear wheel of the trailer and was injured. It was contended that the trailer was an attractive nuisance. The court said (p. 529):

"That doctrine is not applicable. It is limited to things which are dangerous to children because of the likelihood that children will meddle with them, and does not extend to things which become dangerous only when adults set them in motion. For example, it does not apply to moving railroad cars. The doctrine has been applied to turntables, dynamite caps, electric wires, a handcar on a grade, and a junk yard. Roberson was required only to exercise reasonable care in moving the truck and the jury has found, on sufficient evidence, that he did so."

The underlying basis of the attractive-nuisance doctrine is fully discussed in *Powell v. Ligon,* 334 Pa. 250, 254, 5 Atl. (2d) 373. In that case it was said:

"The tendency of those courts which recognize the attractive-nuisance doctrine is to confine, rather than enlarge, its scope."

In *Rapczynski v. W. T. Cowan, Inc., supra,* the court said (p. 398):

"While the courts and legislatures have shown a decided tendency to give additional safeguards to minors of tender years, the responsibility for their care is placed by nature upon their parents. The parents should not be permitted to shift indiscriminately the responsibility to the shoulders of strangers and at the same time penalize strangers for results which are in a large measure due to their own disregard for the welfare of their children. To invoke the doctrine the element of allurement must be present."

In the case of *United Zinc & Chemical Co. v. Britt Co.* 258 U.S. 268, 275, 42 Sup. Ct. 299, 66 L. Ed. 615, Mr. Justice HOLMES said, among other things:

"On the other hand the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult. But the principle if accepted must be very cautiously applied." See *Wendorf v. Director General of Railroads* (1920), 173

Wis. 53, 180 N. W. 128; *Kressine v. Janesville Traction Co.* (1921) 175 Wis. 192, 184 N. W. 777.

That vehicles properly in a street are not attractive nuisances, see *Michalik v. Chicago,* 286 Ill. App. 617, 4 N. E. (2d) 256; *Wright v. Portland Traction Co.* 157 Or. 346, 71 Pac. (2d) 797; *Garis v. Eberling,* 18 Tenn. App. 1, 71 S.W. (2d) 215; *Rasimas v. Chicago Railways Co.* 223 Ill. App. 288.

This court in *Webster v. Corcoran Brothers Co.* (1914) 156 Wis. 576, 579, 146 N. W. 815, held:

"If a person lawfully conducts operations in a place and manner liable to imperil the safety of children of tender years, rightfully in the vicinity, and such children are or may be reasonably expected to be lawfully there, he owes to them the duty of exercising ordinary care to protect them from such peril."

Upon the authorities cited we conclude that the truck was not an attractive nuisance and that the duty which the driver of the defendant Oscar Mayer & Company's truck owed the children in question was that of ordinary care.

The question then for decision is: Did the driver exercise ordinary care under all the circumstances? In that respect we conclude that this case is ruled by *Giessel v. Columbia County* (1947), 250 Wis. 260, 26 N. W. (2d) 650. In that case the driver, after ordering some children off his stopped truck, entered the truck cab from the left side to start the motor, and a sixteen-year-old boy ran up from behind and mounted the right front running board without being visible to the driver because of the load and the design of the truck cab. When the truck started the boy was thrown or fell from the truck and was killed. The driver was found negligent in respect to giving warning of his intention to move the truck. This court said (p. 262):

"We are of the opinion that there was no evidence in the record of causal negligence on the part of the driver. . . . The truck was started in an orderly manner and there is no claim that its course was negligent or that there was any reason

for the driver to stop it sooner than he did. There is no evidence of negligence as to lookout in the ordinary sense since there were no children off the truck who were in any position of peril."

The court further said (p. 263):

"The point is that the truck driver could have made an indefinite number of inspections of the truck without saving decedent from his fate or discovering decedent's presence on the truck because he had ultimately to climb into the truck where decedent was out of his view and decedent was obviously making a last-minute determination to ride the truck."

In this case the driver of the truck had momentarily before entering the cab ordered the children off the truck and saw that they obeyed the warning "by stepping a few steps away" from the truck. While it is alleged in the complaint that they stepped to a place directly opposite the right-hand door and window of the truck cab, even if they were not there the driver had no reason to suppose that they had returned to the place from which he had just ordered them away. They might have gone home or some place to play. At the time he started the truck the driver certainly had no knowledge or reason to suppose that the children were again on the running board of the truck. Under the circumstances the driver of the truck was under no duty to do more than he had done. The fact that the child in this case was very young and could not be guilty of contributory negligence does not alter the case. In *Giessel v. Columbia County* (1947), 250 Wis. 260, 26 N. W. (2d) 650, the judgment was affirmed on the ground that there was no causal negligence on the part of the driver.

It is considered that the trial court was in error in holding that the complaint states a cause of action.

*By the Court.*—Order appealed from is reversed, and the record returned to the trial court for further proceedings according to law.