JAMES, by Guardian *ad litem,* Respondent, vs. WISCONSIN
POWER & LIGHT COMPANY, Appellant.   [Two cases.]

*February 5—March 2, 1954.*

292

For the appellant there were briefs by *Schubring, Ryan, Petersen & Sutherland* of Madison, and *Harry F. Knipp* of

Janesville, and oral argument by *Mr. Robert J. Sutherland* and *Mr. Knipp.*

For the respondents there was a brief by *McWilliams & Steil* of Janesville, and oral argument by *George K. Steil.*

GEHL, J. Liability was asserted under the "attractive-nuisance doctrine." The rule is stated in Restatement, 2 Torts, p. 920, sec. 339:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

This court has recognized the rule as the law of this state. *Angelier v. Red Star Yeast & Products Co.* (1934), 215 Wis. 47, 254 N. W. 351; *Larson v. Equity Co-operative Elevator Co.* (1946), 248 Wis. 132, 21 N. W. (2d) 253.; *Brady v. Chicago & N. W. R. Co.* (1954), 265 Wis. 618, 62 N. W. (2d) 415.

The jury found: (1) That the transmission tower was inherently dangerous to children at and in its vicinity; (2) that defendant should have realized that the tower was inherently dangerous to children at and in its immediate

vicinity; (3) that the defendant knew or should have known that children were likely to trespass upon the premises and climb its transmission tower so as to expose themselves to the danger of the electric current in its transmission wires; (4) that Willard T. James, Jr., was of such youth, tender age, or immaturity that by reason thereof he did not realize or discover the danger involved in climbing the tower and exposing himself to the electric current in the transmission wires; (5) that the defendant could reasonably have provided safeguards to obviate the danger to children without materially interfering with the purpose of the transmission tower; (6) that the facts found in the previous answers were a cause which produced the injuries of Willard T. James, Jr.; (7) that Willard T. James, Jr., failed to exercise such ordinary care for his own safety as a child of his age, capacity, discretion, knowledge, and experience should have exercised under the circumstances; (8) that such failure was a cause which produced the injuries; (9) attributed 55 per cent of the causal negligence to the defendant and 45 per cent thereof to Willard T. James, Jr.

Defendant relies principally upon *Bonniwell v. Milwaukee L., H. & T. Co.* (1921), 174 Wis. 1, 182 N. W. 468, a case involving a tower similar to that upon which Willard was injured, a boy eleven years and four months old, and other facts peculiarly similar to those presented here. The *Bonniwell Case* was decided after the attractive-nuisance doctrine had been expressly rejected in this state. *Zartner v. George* (1914), 156 Wis. 131, 145 N. W. 971. The court in the *Bonniwell Case* cited it as one of the authorities for its conclusion. In *Angelier v. Red Star Yeast & Products Co., supra,* the rule of the *Zartner Case,* restated in *Lewko v. Chas. A. Krause Milling Co.* (1922), 179 Wis. 83, 190 N. W. 924, was expressly overruled and the rule of Restate-

ment adopted. We have found no Wisconsin cases, other than the *Bonniwell Case*, in which the entire factual basis is similar in kind to that of this. We must judge this one upon its own facts and in recognition of the fact that the court has accepted the attractive-nuisance doctrine.

In an annotation and digest of cases dealing with the precise question it is said:

"In the majority of cases considering the question such a tower or pole has been held not to be such an attractive nuisance as to render the owner liable for injury to, or death of, a child while climbing on the tower or pole." 6 A. L. R. (2d) 759.

And at page 779 of the same annotation:

"The commonest factor weighed by the courts in determining liability for the injury or death of a child while on an electric tower or pole is the manner of its construction, and more especially the ease with which it may be climbed, due to the presence of steps or cleats, or of lattice or similar work on the tower."

When it is considered that to reach the place at which he was injured it was necessary for Willard, with effort and a degree of dexterity not ordinarily found in children of tender years, to climb crossbars a distance of 12 feet to the foot of the spike ladder, then up the spike ladder 20 feet and 8 inches to the sixth crossbar, cross this bar to a ladder of the usual type, continue up this ladder four feet to the outrigger 37 feet above ground level, and then out upon the outrigger to the place of danger, is it reasonable to assume that the defendant should have anticipated that anyone but a reckless boy would make the perilous journey to encounter the danger? The answer must be in the negative, particularly when it is

considered also that the defendant had no knowledge of any previous similar efforts except one to which we will refer later in this opinion. Quoting again from the annotation in 6 A. L. R. (2d) 759, 779:

"The type of construction of electric-transmission towers, and the provisions for climbing, or ease with which they might be climbed because of the manner of their construction, have been considered in many cases, in the majority of which it was held that the owner of the tower was not liable for the injury or death of a child while climbing thereon."

It cannot be said that under the circumstances Willard was of the class of children who "because of their youth do not discover the condition or realize the risk involved in intermeddling in it [the structure] or in coming within the area made dangerous by it." Clause (c) rule of Restatement, 2 Torts, p. 920, sec. 339. On a previous occasion he had started to climb another tower in the vicinity but returned to the ground when a bystander told him that it was dangerous. He testified that he did not touch the wire because he was afraid that if he touched it he would receive a shock. His companion, a boy eleven or twelve years old who accompanied him to the tower, asked him when he was half way up the tower to come down. His answer to the request was a suggestion that the playmate also climb; he said to him, "you don't have to be chicken" or something to that effect. Again the playmate suggested that he come down.

True, he testified that he thought there was no danger unless he touched a wire. He did know, however, when he went onto the outrigger, which was only four feet long, that he would come into close proximity to the wire within the area of danger. The possessor's liability—

". . . does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them. This limitation of the possessor's liability to conditions dangerous to children, because of their inability to appreciate their surroundings or to realize the risk involved therein, frees the possessor of land from the danger of liability to which he would otherwise be subjected by maintaining on the land the normal, necessary, and usual implements which are essential to its normal use but which reckless children can use to their harm in a spirit of bravado or to gratify some other childish desire and with as full a perception of the risks which they are running as though they were adults." Restatement, 2 Torts, p. 922, sec. 339.

It is also said at page 925 of the same volume:

"The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein but nonetheless chooses to encounter it out of recklessness or bravado."

The doctrine is intended for the protection of children of tender years, not to require the owner of a structure, built in the free use of his own land and doing that which is necessary in carrying on his business properly, to so guard and secure it as to prevent its use by children who are brought to it in a spirit of recklessness or bravado.

The circumstance that the notice sent by the public service commission to the defendant of a previous similar happening

is emphasized by plaintiffs as one requiring affirmance. It should be noted again that there is no other proof that defendant had been made aware that its towers had been used by children as it was on this occasion. Is this isolated notice sufficient to subject the defendant to liability under the doctrine? We think not. If so, it would require us to say that defendant must guard all its towers not only to prevent injury to children of tender years, but also to prevent trespass upon them by reckless children regardless of their age. It must be kept in mind that the first inquiry is not: What have children done upon or near the place in question? It is: Is the place one upon which the possessor knows or should know that young children are likely to trespass and which he knows or should know and which he realizes or should realize involves an unreasonable risk to such children? It is the character of the instrumentality which must be considered *initially*, not the conduct or instincts of children.

Also, we are unable to say that the notice was sufficient to apprise defendant of the probability that boys of tender years had climbed tower 301 or others of similar construction. The record fails to disclose any of the circumstances attending the event to which the notice refers. Particularly, we do not know whether the tower therein referred to was safeguarded as was tower 301.

Plaintiffs also emphasize that the tower stood in close proximity to a Boy Scout camp and contend that this fact is in itself sufficient to establish constructive notice of its danger to children. It is, of course, a circumstance to be considered, but it is not controlling. That appears from a reading of the cases digested in the annotation contained in 6 A. L. R. (2d) 759, 764 *et seq*. It is to be observed that in each of the cases there referred to and in which recovery

was allowed, the fact of the location of the tower was coupled with other facts which do not appear in this case. There are in those cases, for instance, such factors as readily accessible ladders, knowledge on the part of the owner of the frequent use of the tower by children, lack of warning signs, and lack of knowledge on the part of the child of the danger. The same is true of the cases cited by plaintiffs in support of their contention, *Znidersich v. Minnesota Utilities Co.* (1923), 155 Minn. 293, 193 N. W. 449; and *McKiddy v. Des Moines Electric Co.* (1926), 202 Iowa, 225, 206 N. W. 815. In each of them the pole upon which the boy had ascended was easy to climb.

That the ease with which a boy might be able to climb the tower because of the presence of a readily available ladder is considered an important factor in determining liability is demonstrated in *Brown v. American Manufacturing Co.* (1924), 209 App. Div. 621, 623, 205 N. Y. Supp. 331, 333, where, in a factual situation similar to that considered here, the court denied recovery and laid particular emphasis upon the circumstance that "the tower was so constructed, and the wires strung at such a height that one would not anticipate that immature children would climb it and reach the wires." It appears from the court's statement of the facts that the tower had been so built as to be almost identical with that with which we are concerned; extending between the legs of the tower were horizontal strips of steel, the lowest of which was about six feet above the ground level; there were diagonal braces; and upon one of the corner posts there were pegs for climbing, the lowest of which was 10 or 11 feet from the base. It is significant also that in that case the tower was erected in a yard of tenement houses where children were accustomed to play.

In *Texas Power & Light Co. v. Burt* (Tex. Civ. App. 1937), 104 S. W. (2d) 941, 943, a boy was injured when he climbed a tower located on the bank of a river in the wooded section of a public park. It had two spiked ladders the lowest of which spikes was from four to seven feet from the concrete base of the tower. The court in denying recovery said:

"Furthermore, considering the manner in which this tower was constructed and the natural and apparent danger that would have to be overcome before one could reach the zone where he might be injured by the electric current, it is unreasonable to assume that a child young enough to be possessed of such childish impulses as is contemplated by the attractive-nuisance doctrine, would have the courage to climb the tower on the spike ladder far enough to encounter the danger here contemplated."

Plaintiffs contend that defendant should have provided more safeguards at or near the foot of the tower. What we have said as to the nature and character of the structure as it existed and the responsibility of the defendant with respect thereto answers that contention. Defendant was not limited in its choice of means of avoiding danger. One of the reasons for carrying the wires at a high elevation was to place them out of reach. We may assume also that it was for the same reason that the foot of the lower ladder was 12 feet above the ground level. An owner of land is required to foresee or anticipate *probable* harm to others; he is not required to guard against every *possible* danger to children or others.

"The use of property, to which an owner is entitled, should not be incumbered with the necessity of taking precautions against every conceivable danger to which an irrepressible

spirit of adventure may lead a child." 38 Am. Jur., Negligence, p. 813, sec. 147.

We are aware that there are cases which might be accepted as authority for plaintiffs' contentions. Practically all of them cited by plaintiffs and those which we have found in our own research are distinguishable in their facts, however. A study of the cases reveals nothing really definite except that each must be determined upon its own facts.

For the reasons stated, we conclude that the facts presented in this case do not call for application of the attractive-nuisance doctrine.

*By the Court.*—Judgment reversed with directions to dismiss the complaints.

CURRIE, J., took no part.