NECHODOMU, by Guardian *ad litem,* and another, Respondents, vs. LINDSTROM and others, Appellants.*

*June 4—June 22, 1956.*

* Motion for rehearing denied, with $25 costs, on September 11, 1956.

314

For the appellants Robert Abts and Wilbert Lindstrom, Jr., there was a brief by *Ben E. Salinsky* and *Gruhle & Fessler,* all of Sheboygan, and oral argument by *Mr. Salinsky.*

For the appellants Gerald Lambert and Donald Zinda there were briefs and oral argument by *Dudley O. Emmert* of Manitowoc.

For the respondents there was a brief by *Frank A. Murphy* and *John R. Cashman,* guardian *ad litem,* both of Manitowoc, attorneys, and *Murphy & Brady* and *Cashman & Savage,* all of Manitowoc of counsel, and oral argument by *Mr. Murphy* and *Mr. Cashman.*

MARTIN, J. On May 22, 1952, defendants Lambert and Zinda were the owners of property located just south of the city of Manitowoc where they operated a farm-implement business. The property is large and includes a building consisting of a store downstairs and living quarters upstairs where the said defendants and their families lived. They maintained a play area near the building, with sandboxes and swings, for the use of their children and neighboring children.

Lambert and Zinda had contracted with Robert Abts to apply imitation stone called Dura-stone to the exterior of the building. On the morning of May 22d Abts brought a machine referred to as a "mud mixer" to the premises, in which machine the Dura-stone was mixed for application to the building. The machine was located about 20 feet from

the northeast wall of the building and in close proximity to it were placed a sand pile and a sifting screen, bags of cement, and a water barrel which was filled by means of a hose attached to the building. Water for the mixture was taken from the barrel with a pail.

The machine was run by a gasoline engine. Its construction was that of a stationary drum with revolving blades or fins, which defendants' expert witness, Elroy Becker, described as more dangerous than a cement mixer because "the fins are close to the drum all the time." The top of the drum was 44 to 48 inches above the ground and was open except for five iron rods placed horizontally across and somewhat above the opening, spaced widely enough to admit a man's arm.

When operation of the machine was begun on the morning of May 22d the neighboring children gathered about, including Joseph Nechodomu, Jr., then aged nine years. Lindstrom, who was mixing the material, testified that the children played with the sand, shoveling and sifting it, and Joey held the hose while the barrel was being filled with water. He particularly remembered Joey "because he wanted to do everything;" and he told the children that they should not come near the machine when it was running or somebody might be hurt; that they should go away. While he and other employees were eating lunch at noon they noticed Joey and another child playing with the water hose and told them to go away.

It was Lindstrom's job to mix the material and haul it to the building where other men applied it. About the middle of the afternoon, after mixing a load of the material, he took a wheelbarrow load around to the other side of the building where the men were working. The machine was left running and while it was thus left unattended Rickey Zinda reached into the drum with a can to take out some of the material. He dropped the can and Joey put in his right hand to retrieve it, receiving the injuries for which damages are sought.

None of Abts' employees could observe the machine from the position where they were working on the building.

The first seven questions of the special verdict dealt with the negligence of the parties with respect to the cause of action based on attractive nuisance; the first three as to Lindstrom and Abts; the second three as to Lambert and Zinda; the seventh as to the minor.

Question 1 inquired:

"Were the defendants Lindstrom or Abts negligent in respect to maintaining or allowing to exist on the premises where the injury to the plaintiff, Joseph Nechodomu, Jr., occurred, a machine inherently dangerous to children upon such premises? Answer: Yes."

Defendants contend that the doctrine of attractive nuisance does not apply. In our opinion, the evidence presented a question of fact for the jury whether, under all the circumstances existing, the machine was inherently dangerous to children and constituted an attractive nuisance.

In *Best v. District of Columbia* (1934), 291 U. S. 411, 419, 54 Sup. Ct. 487, 78 L. Ed. 882, where a child drowned after falling through a hole in a wharf maintained by the defendant, the court stated:

"The question is one of negligence,—whether particular circumstances gave rise to a duty which had not been performed. . . . The duty must find its source in special circumstances in which, by reason of the inducement and of the fact that visits of children to the place would naturally be anticipated, and because of the character of the danger to which they would unwittingly be exposed, reasonable prudence would require that precautions be taken for their protection."

In *Gimmestad v. Rose Brothers Co.* (1935), 194 Minn. 531, 536, 261 N. W. 194, where a boy was injured while playing with other children on a pile of lumber on an unfenced private lot, the Minnesota court, following the *Best Case,* stated:

"It should be clear by now that the phrase 'attractive nuisance' indicates no special departure or exception from the ordinary run of negligence cases. It is but a convenient phrase to designate one sort of case within the ordinary rule that one is liable for injury resulting to another from failure to exercise, for the protection of the injured child, the degree of care commensurate with and therefore demanded by the circumstances. The greater the hazard the greater the care required."

In contending that the mud mixer was not an inherently dangerous instrumentality, defendants cite *Coffey v. Oscar Mayer & Co.* (1948), 252 Wis. 473, 32 N. W. (2d) 235, where a child fell off an ice truck when the driver set the vehicle in motion. In considering whether such a truck was an inherently dangerous instrumentality, this court held that it was not. In considering whether the driver exercised ordinary care under all the circumstances, the court followed *Giessel v. Columbia County* (1947), 250 Wis. 260, 26 N. W. (2d) 650. In both cases the drivers had told the children to get off and stay away from the truck, which they did, and later the injured child mounted the truck where he could not be seen by the driver and was hurt when the truck was set in motion.

Trucks and automobiles have been held by this court not to be attractive nuisances, that the doctrine " 'is limited to things which are dangerous to children because of the likelihood that children will meddle with them, and does not extend to things which become dangerous only when adults set them in motion.' " Drivers are required only to exercise reasonable care in moving the vehicle. *Coffey v. Oscar Mayer & Co., supra,* page 478 *et seq.*

A truck or automobile would be comparable to the machine here in question only if it were, for instance, left running with the hood up, unattended, and under such circumstances as would permit children who were attracted to them to reach into the moving engine parts.

It cannot be said as a matter of law that the mud mixer, under all the attendant circumstances, was not a machine inherently dangerous to children. That question was for the jury and its finding, that it was, is amply supported by the evidence. The expert Becker testified it was a dangerous machine because the revolving blades were very close to the wall of the drum. The rods at the top were neither deterrent nor protection to children who might reach into the drum, and the height of the opening from the ground made it easily accessible to children of the age and size of those who were playing on the premises. The machine was in motion and unattended, although it was equipped with a clutch which would disengage the moving parts from the motor. That its operation and all the accessories to its operation—sand pile, hose, and water—were attractive to the children was shown by the evidence that they gathered around watching the machine and playing with the sand, the shovels, and the hose.

"Sand piles close at hand would constitute 'a bait' they [children] would inevitably follow." *Best v. District of Columbia, supra,* page 419.

Lindstrom testified that several times during the morning he saw the children playing around the machine, that "they were passing back and forth there by the sand and the water." He further testified that once, upon returning to the machine, he saw Joey and another boy in the field across the street and they looked like they were hiding from him. On cross-examination he said there was water on the ground near the machine and he wondered about it, admitting that he must have thought the children might have been near the machine while he was absent from it.

Here again the facts are different from the *Coffey* and *Giessel Cases.* In those cases the children gathered around the trucks were told to stay away and they did stay away. The drivers, having no reason to believe they had returned and being unable to see the injured child from their position

as they started up the trucks, were held not negligent. Here, however, where Lindstrom had reason to believe the children were playing around the machine in his absence, it was for the jury to determine whether the operation of the machine in the manner it was operated constituted a breach of the duty which was commensurate with the circumstances.

Defendants argue that the trial court erred in submitting the form of question 1 in the affirmative. After reading the question to the jury the court instructed as follows:

"Now, the question is were these two defendants negligent in maintaining or allowing to exist upon the premises a machine inherently dangerous to children upon the premises, *and the machine we are talking about is this particular mud-mixing machine which you have viewed and pictures of which have been received in evidence.*" (Emphasis ours.)

The argument that the form of the question would lead the jury to believe that the machine was an inherently dangerous instrumentality is, as stated by the trial court, a mere play on words. The jury could not answer "Yes" to question 1 unless it had first determined from the evidence that the machine was inherently dangerous, and the court's instruction made that clear.

Question 2, contingent upon a "Yes" answer to question 1, inquired as to the causal connection between the defendants' negligence and the injury to the boy. This was answered "Yes."

Question 3, also contingent upon a "Yes" answer to question 1, inquired (a) whether the defendants knew or should have known that children were likely to be on the premises where the accident occurred—answered "Yes;" and (b):

"Did the defendants Lindstrom or Abts realize or should they have realized that the mud-mixing machine maintained by them was inherently dangerous to children and involved unreasonable risk of serious bodily injury to children? Answer: No."

Subdivision (c) of question 3 inquired whether the defendants could have provided safeguards which would have obviated the danger without materially interfering with the work of the machine, and that question was answered "Yes."

Questions 4, 5, and 6 (a), (b), and (c) reiterated questions 1, 2, and 3 (a), (b), and (c) except that they referred to defendants Lambert and Zinda. Question 6 (b), similar to question 3 (b) quoted above, was likewise answered "No" by the jury, whereas the remainder were answered "Yes." Question 7 inquired:

"If you answer either or both questions 1 and 4 'Yes,' then answer this question:

"Did Joseph Nechodomu, Jr., because of his youth or tender age, *fail* to discover the condition or realize the risk involved in playing in close proximity to the mud mixer and in placing his hand in such mud mixer? Answer: Yes."

As pointed out by the trial court, the jury found all the conditions existing which are required to be found to establish liability in an attractive-nuisance case under the rule of *Angelier v. Red Star Yeast & Products Co.* (1934), 215 Wis. 47, 254 N. W. 351, with the exception of realization by defendants that the machine was inherently dangerous and involved unreasonable risk of bodily injury to children.

On motions after verdict the court changed the jury's answers to questions 3 (b) and 6 (b) from "No" to "Yes." Defendants contend this was error. We cannot agree. Defendants themselves call attention to testimony of Lindstrom and others, including Mrs. Gerald Lambert, Mrs. Joseph Lambert, and Mrs. Donald Zinda, that Joey and the other children were warned to stay away from the machine. Lindstrom testified:

"I don't remember which I said first, but I know that I did tell them that they would have to get away, and that when the machine was running they should not come anywheres near there, and I believe then they backed up, but they still didn't go away, and I said that they had to go away, they

had to clear out completely and stay away, otherwise somebody might be hurt."

Defendants, admitting that they had frequently warned the children to stay away from the mixer, cannot seriously assert that they did not realize it created a condition inherently dangerous to the children. They knew the children were present; they knew they were attracted by the machine and the character of the surrounding circumstances. They were bound to anticipate that injury might occur.

In *Herrem v. Konz* (1917), 165 Wis. 574, 578, 162 N. W. 654, where a boy nine years old was caught in a revolving shaft under a sawmill and defendant knew that children played in close proximity thereto, this court said:

"Under these circumstances the defendant was bound to anticipate that an injury might result to some child by coming in contact therewith."

The jury having found, under all the circumstances and conditions existing at the time, that the mixer was a machine inherently dangerous to children, it must follow from all the evidence regarding defendants' warnings, that they realized it was dangerous and involved risk of injury to the children. The trial court properly changed the answers to questions 3 (b) and 6 (b).

This is not a case of an automobile or other familiar machine placed where it is normally to be found. The situation is that of an unusual machine brought to a place where children customarily played and used in connection with a sand pile and water—objects for which children have a known natural propensity. It was something that defendants should have realized the children's natural curiosity would lead them to meddle with. Such a machine, set in motion and left unattended, although its moving parts which constituted the danger could have been stopped by simply disengaging the clutch, when it was known that the children were attracted and defendants had in fact permitted them to play in the wa-

ter and sand around it—under all these circumstances they should have anticipated that the children might injure themselves by doing just what Joey did.

Counsel argues that in the majority of cases the doctrine of attractive nuisance has been applied only to a dormant condition or suspended operation. That may be true, but in *Kelly v. Southern Wisconsin R. Co.* (1913), 152 Wis. 328, 140 N. W. 60, this court held that a rope-and-pulley contrivance in operation by linemen in the stringing of electric wires on a city street was such a condition as made the doctrine applicable. See also *Herrem v. Konz, supra.*

The question whether the minor plaintiff, because of his tender years, failed to realize the risk involved in placing his hand into the drum of the machine was for the jury and it found he did not realize the risk. Joey testified that he knew there were paddles in the machine, that they were moving, that the machine had a motor and it was running. From this defendants reason that he must have realized the risk of placing his hand in the drum. This is only a part of his testimony. He further stated that just prior to placing his hand in the machine "Mary Lou Zinda started to get cement out of the mixer and she was the first one to get some cement out. She used her hand, I think. I know, because she told us." After that Rickey dropped the can in the drum and Joey then attempted to get it out. The jury could well infer from this testimony that, Mary Lou having successfully taken out some of the material with her hand, Joey believed he could do likewise.

The danger, as stated by Becker, lay in the lack of clearance between the moving blades and the walls of the drum. Since the drum had cement in it at the time Joey reached in, it cannot be said that he should have known of such lack of clearance, or, even if he did know of it, that he should have known it represented a dangerous condition. The evidence

is susceptible of the inference that he did not appreciate the danger and supports the jury's finding in question 7 of the special verdict.

It is contended that the trial court erred in its instructions because it did not inform the jury that the burden of proof was upon plaintiffs to show that Joey failed to realize the risk. The court instructed as to all the questions in the special verdict:

". . . before you can answer a certain question 'Yes,' calling for a 'Yes' or 'No' answer, your minds must be satisfied to a point by the evidence where you feel reasonably certain that the answer to that question should be 'Yes;' and if the evidence bearing on that question does not so satisfy you, then your answer to that question should be 'No,' or to disagree."

The instruction was proper. No matter whose burden it was to prove that Joey failed to realize the extent of risk involved, under the instruction given the jury could not find in his favor unless it was persuaded by the evidence to answer "Yes" to question 7.

It is also contended that the following instruction with respect to "a machine inherently dangerous to children upon such premises" was erroneous:

"An artificial condition may be peculiarly dangerous to children because of their tendency to intermeddle with things which are notoriously attractive to them, but this is not the only childish characteristic which may make an artificial condition which involves no serious risk to an adult highly dangerous to children. . . . The lack of experience and judgment normal to young children may prevent them from realizing that a condition observed by them is dangerous or, although they realize that it is dangerous, may prevent them from appreciating the full extent of the risk."

As pointed out by defendants, this instruction is taken verbatim from Restatement, 2 Torts, p. 923, sec. 339, *com-*

*ment on clause* (b), sub. *c.* (See *James v. Wisconsin Power & Light Co.* (1954), 266 Wis. 290, 295, 63 N. W. (2d) 116.) As stated in *Nechodomu v. Lindstrom* (1955), 269 Wis. 455, 458, 69 N. W. (2d) 608, when this case was before us on demurrer, the rule referred to requires that it be determined whether the dangerous condition is such that the danger is obvious even to children and the risk is fully realized by them. The question whether a condition is inherently dangerous to children involves the question whether the danger is such as would be obvious to children. We cannot see how the instruction could have been given to make this interrelation clear to the jury in words more precise than those used by the trial court.

It may be noted that the defendant owners' argument on this point directs attention to illustration 3 in the Restatement, *supra,* as applying to *comment on clause* (b) which is the rule from which the court's instruction was taken. In this counsel is mistaken. Illustration 3 applies to the second subdivision of *clause* (a), a subdivision dealing with the possessor's duty when the risk is such that children can appreciate it.

Following the language quoted above, the court further instructed, following the rule of the Restatement:

"In connection with this question 7 you are instructed that while 'possessors of land are under a duty to keep so much of their land as they know to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. *This does not require them to keep their land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize.* The purpose of the duty is to protect children from danger which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger, and therefore, *even*

*though the condition is one which the possessors should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessors are not subject to liability to a child who, in fact, discovers the condition and appreciates the full risk involved therein,* but nonetheless chooses to encounter it out of recklessness or bravado.' Restatement, 2 Torts, p. 925, sec. 399, *comment on clause* (c)." (Emphasis ours.)

We see no prejudice to the defendants in this instruction.

Defendants argue that Joey was a trespasser both as to the premises and as to the mud mixer. The argument has no merit, since we hold that the doctrine of attractive nuisance applies in this case.

"The attractive-nuisance doctrine imposes liability for injuries to children of tender years, even though they are technical trespassers, where such injuries are the result of the failure of the owner or person in charge to take proper precautions to prevent injuries to children by instrumentalities or conditions which he should, in the exercise of ordinary judgment and prudence, know would naturally attract them into unsuspected danger. In such a situation it is not a defense that the dangerous thing maintained is situated on defendant's property in consequence of which under ordinary circumstances the injured person would be a trespasser. The doctrine has been regarded as an exception to the general rule, . . . that an owner or person in charge of property has no duty to a trespasser except to refrain from injuring him intentionally, wilfully, or wantonly." 65 C. J. S., Negligence, p. 456, sec. 29 (1).

Counsel for Lambert and Zinda maintain that they violated no duty owing to the plaintiff in permitting the independent contractor to bring the mixer on their premises and operate it there. The same argument was made when this case was before us on demurrer and was answered in *Nechodomu v. Lindstrom, supra,* page 459, where this court reiterated the rule stated in 27 Am. Jur., Independent Contractors, p. 515, sec. 38.

The complaint stated two causes of action, one based on the attractive-nuisance theory and the other on the safe-place statute. The case was submitted to the jury on both theories, and the court entered judgment on the attractive-nuisance cause of action. The findings amply support the judgment.

*By the Court.*—Judgment affirmed.

The following opinion was filed September 11, 1956:

PER CURIAM (*on motion for rehearing*). We are confronted on the motion for rehearing filed by the defendants Lambert and Zinda with the issue of whether our comparative-negligence statute (sec. 331.045, Stats.) is applicable to the facts of the instant case so as to require a reduction in the amount of damages awarded to the plaintiffs by the judgment appealed from.

While certain of the questions of the special verdict and the jury's answers thereto are set forth in our original opinion, we deem it essential to set forth questions 10 and 11 of such verdict together with the jury's answers thereto:

"Question 10. Was Joseph Nechodomu, Jr., negligent for his own safety? Answer: Yes.

"Question 11. If you answer question 10 'Yes,' then answer this question: Was such negligence on the part of Joseph Nechodomu, Jr., a cause of his injury? Answer: Yes."

By its answer to question 14 (the comparative-negligence question), the jury attributed 18 per cent of the total negligence to the plaintiff, Joseph Nechodomu, Jr.

Thus, although the jury, by its answer to question 7, found that Joseph because of his age or tender youth, failed to realize the risk involved in playing in close proximity to the mud mixer and in placing his hand in such machine, it nevertheless found him guilty of contributory negligence. Such findings are not necessarily inconsistent. The jury

could well have concluded from the evidence in the case that this nine-year-old boy, even though he did not realize the risk involved in placing his hand inside the mixer, nevertheless failed to exercise the degree of care which is ordinarily exercised by children of his age, experience, and intelligence.

We deem that our decision in *Britten v. Eau Claire* (1952), 260 Wis. 382, 391, 51 N. W. (2d) 30, is directly in point on the question of whether the jury's answers to questions 10, 11, and 14 may be permitted to stand in view of its answer to question 7. We quote from Mr. Justice GEHL's opinion in the *Britten Case* as follows:

"While it is true that a child of tender years may not be charged with knowledge of statutory rules of conduct, as were considered in *VanLydegraf v. Scholz, supra,* and similar precepts, still the jury was warranted in determining, even in the absence of warning and lacking familiarity with a machine of this character, that in exposing himself to the danger of playing about this equipment he did not exercise the degree of care which is ordinarily exercised by children of his age, experience, and intelligence."

One of the essential elements necessary for the application of the principle of attractive nuisance is that the injured minor, because of his tender age, shall have failed to have discovered the dangerous condition and realize the risk involved. *Brady v. Chicago & N. W. R. Co.* (1954), 265 Wis. 618, 624, 62 N. W. (2d) 415; *James v. Wisconsin Power & Light Co.* (1954), 266 Wis. 290, 295, 63 N. W. (2d) 116; and Restatement, 2 Torts, p. 920, sec. 339. However, this does not mean that the doctrine of attractive nuisance never applies where the child is guilty of contributory negligence. This is because the test in determining negligence, and this includes contributory negligence, is an objective and not a subjective one. Therefore, whether the actor did or did not appreciate the danger of the situation may be of no materiality.

The law of attractive nuisance is but a phase of the law of negligence. It necessarily follows that if the plaintiff child is guilty of contributory negligence our comparative-negligence statute applies. This was the necessary import of that part of our decision in *Britten v. Eau Claire, supra,* wherein we held that the plaintiff child's contributory negligence presented a jury issue.

It is, therefore, our conclusion that the trial court erred in entering judgment for the full amount of the plaintiffs' found damages instead of reducing the same by 18 per cent of the total aggregate negligence to the plaintiff child.

The prior mandate is vacated and the judgment is modified by reducing the damages recoverable by the plaintiff, Joseph Nechodomu, Jr., from $15,600 to $12,792, and by reducing the damages recoverable by the plaintiff, Joseph Nechodomu, from $2,227.60 to $1,826.63, and, as so modified, the judgment is affirmed. The defendants are entitled to tax costs on this appeal. The motion for rehearing is denied with $25 costs to the moving parties.